UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TAILORED LIGHTING, INC.,

            Plaintiff,

      v.

OSRAM SYLVANIA PRODUCTS, INC.,

            Defendant.

_____

**DECISION & ORDER**

04-CV-6435T

## **PRELIMINARY STATEMENT**

By order dated January 19, 2005, the above-captioned matter has been referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B). (Docket # 16). Plaintiff Tailored Lighting, Inc. ("TLI") has filed suit against Osram Sylvania Products, Inc. ("Sylvania") alleging infringement of one of its patents. (Docket # 1). Specifically, TLI contends that Sylvania has infringed the patent for its "Daylight Lamp," an automotive lamp that "produce[s] light substantially equivalent to daylight in color temperature and color balance." (Docket # 1 at ¶ 10).

## **DISCUSSION**

Currently before this Court is Sylvania's motion for a protective order precluding TLI from deposing John D. Mitchell, Jr., Esq., formerly the Chief Intellectual Property Counsel for Sylvania. (Docket # 123). Also before the Court is Sylvania's motion for leave to file an

amended answer. (Docket # 131). Finally, TLI has moved to compel Sylvania's production of a "proper" witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (Docket # 148). The following constitutes this Court's Decision and Order with respect to each of the pending motions.

### I. Sylvania's Motion for a Protective Order

On March 11, 2008, TLI served a notice of deposition for John D. Mitchell, Jr. ("Mitchell"), who was one of Sylvania's in-house attorneys at the time the notice was served. TLI contends that Mitchell's deposition is justified because he verified the company's responses to interrogatories served by TLI upon Sylvania.[1] Sylvania opposes the deposition and moves for a protective order, arguing that Mitchell lacks firsthand knowledge of the issues TLI seeks to explore and that his deposition poses a substantial risk of invading the attorney-client and work-product privileges. (Docket # 124).

The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The relevance standard is thus commonly recognized as sufficiently broad in scope "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

---

[1] Interrogatories served upon a corporation must be answered by "an[] officer or agent," who must "furnish the information available to the [corporation]." Fed. R. Civ. P. 33(b)(1)(B). The answers must be signed by "[t]he person who makes [them]." Fed. R. Civ. P. 33(b)(5).

351 (1978) (citation omitted). *See Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (parties entitled to discovery of any matter that appears "reasonably calculated to lead to the discovery of admissible evidence").

Despite the otherwise lenient standard for discovery, depositions of opposing counsel are generally "disfavored," although not prohibited. *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991). *See also In re Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) ("the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered"); *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002) ("[t]h[e] presumption [disfavoring attorney depositions] is based on the recognition that even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation") (internal quotations omitted). In determining whether a deposition of an attorney is appropriate in a particular case, the court should be guided by consideration of the following factors:

> the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*In re Friedman*, 350 F.3d at 72. As the Second Circuit has counseled, "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Id.*

TLI urges the Court in this case to disregard the factors identified in *Friedman* on the grounds that in-house counsel should be treated less protectively than outside counsel when considering the appropriateness of an attorney's deposition.  TLI has not cited any authority, however, nor has this Court found any, to suggest that the *Friedman* considerations do not apply to depositions of in-house counsel.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (communications with counsel are protected regardless of whether the attorney is outside counsel or corporate counsel).  Although depositions of inside counsel may present certain issues not likely to arise during depositions of outside counsel – namely, questions of whether counsel's advice properly constitutes legal advice or business advice, *see ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996) – the *Friedman* factors nonetheless provide a proper framework for analysis.  Differentiating between legal and business advice will necessarily be encompassed by the court's consideration of the need to depose the lawyer (the first *Friedman* factor) and the lawyer's role in connection with the matter on which discovery is sought (the second factor).

Turning to TLI's need to depose Mitchell, I begin by examining the reasons TLI has offered to justify the requested deposition.  When it originally noticed Mitchell's deposition, TLI explained that its purpose for the deposition was to explore the bases of Mitchell's verification of Sylvania's interrogatory answers.  Specifically, counsel for TLI argued, "we are entitled to question [Mitchell] on the veracity and sources of [Sylvania's] responses."  (Docket # 124 at ¶ 17).  Following a subsequent conference with the Court, during which counsel for TLI reaffirmed its desire to depose Mitchell concerning his verification, Sylvania provided a written

list identifying, for each interrogatory, those individuals who assisted Mitchell in answering. (Docket # 124-3).

Despite that identification, during oral argument of this motion, TLI persisted in its contention that the deposition was justified in order to elicit testimony identifying the individuals with whom Mitchell had conferred to answer the specific interrogatories. When pressed on that point, counsel maintained that TLI seeks to examine Mitchell not just about the identification of sources, but also about the particular information Mitchell obtained from each source. In addition, for the first time during the several-month period that the parties had been discussing this dispute, TLI's counsel expressed a desire to examine Mitchell about unspecified comments he purportedly made to Sylvania's counsel concerning the merits of this case, which TLI believes may support an award of attorneys' fees and costs under applicable law. This alternative justification for Mitchell's deposition is entirely absent from TLI's papers submitted in opposition to the pending motion.

The timing of TLI's notice of deposition is relevant to my assessment of its need to depose Mitchell. It was served no more than twenty days before the discovery deadline, thus effectively precluding TLI from conducting any follow-up discovery based upon information it could have learned during the deposition. For that reason, TLI cannot argue, and has not argued, that it should be permitted to examine Mitchell as to his sources for Sylvania's responses so that it may thereafter depose or otherwise seek discovery from those sources.

Rather, its request appears limited to identifying the particular information provided by those sources to Mitchell. TLI maintains that with that information in hand it will be in a position to subpoena those sources as trial witnesses, if it chooses. Whether such a litigation

strategy is wise or even likely to be utilized are questions beyond the proper purview of my judgment.  For purposes of this motion, I cannot conclude that Mitchell's testimony, limited to the issue of identifying the information provided to him by those who assisted him in answering TLI's interrogatories, would not be relevant to TLI's claims and would not be reasonably calculated to lead to the discovery of admissible trial evidence.[2]  Moreover, Mitchell appears to be the only witness who could testify to the myriad bases for Sylvania's interrogatory responses.  Although his responses are not likely to be based on firsthand knowledge, that limitation alone should not preclude TLI from examining in the most effective way possible the sources of information upon which the answers are based.  Even if TLI had time under the discovery schedule to conduct individual depositions of Mitchell's sources, which it does not, these depositions would number in excess of a dozen.[3]

Turning to the next factor – the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation – two facts are principally important.  First, Mitchell's firsthand knowledge of the events that gave rise to the litigation is likely limited by the fact that he was not hired by Sylvania until after this lawsuit was filed.  That said, his role was central to the matter about which discovery is sought – the bases for the company's answers to interrogatories.  While that issue is a proper subject of discovery, *see Thomas & Betts Corp. v. Panduit Corp.*, 1999 WL 1129607, *1 (N.D. Ill. 1999) (attorney's verification of interrogatory answers is "an invitation to be deposed"), the risk of encountering

---

[2]  As to TLI's alternative purpose for the deposition, I find that such purported justification has been advanced too belatedly to permit the deposition to proceed on this basis.

[3]  Sylvania identified sixteen individuals who assisted Mitchell in answering the interrogatories.  (Docket # 124-3).

privileged information in the course of doing so – the third *Friedman* factor – cannot be discounted. For example, Mitchell's thought processes concerning whom and what documents to consult in investigating TLI's interrogatories likely falls within the ambit of the protection afforded under the work-product doctrine. So too would his deliberations about what information to include and what to exclude in the answers. Similarly, the possibility that he may have had privileged communications about the facts and information he assembled cannot be gainsaid. Given these risks, there is a strong need to carefully and cautiously circumscribe any permissible areas of testimony.

      The final factor to be considered is the extent to which discovery has already been conducted, and I conclude that this factor does not favor one party over the other. On the one hand, as previously noted, TLI waited until the last possible day to timely serve its notice under the scheduling order. This timing belies any contention that the testimony sought is a critical step to conducting further discovery. On the other hand, the fact that TLI served its notice at the end of discovery refutes any contention by Sylvania that the notice is premature and should await the completion of other discovery means.

      Balancing the *Friedman* factors in the "flexible" manner that the Second Circuit counsels leads me to conclude that a narrowly-circumscribed deposition of Mitchell should be permitted. Specifically, he should be required to offer testimony as to the following topics only: (1) identifying the information provided to and relied upon by Mitchell, whether through communications with individuals or review of documents, in answering the interrogatories; (2) identifying the particular source (person or record) of that information; (3) non-privileged communications between Mitchell and his human sources about that information that occurred in

the course of investigating and answering the interrogatories. Counsel for TLI may not question Mitchell about any issues beyond these enumerated topics. Accordingly, and on this basis, Sylvania's motion for a protective order precluding Mitchell's deposition is denied.

## II. Sylvania's Motion for Leave to File an Amended Answer

Sylvania moves to amend its answer in order to add additional grounds that the TLI patent at issue is unenforceable due to inequitable conduct in its maintenance. (Docket # 132). Specifically, Sylvania states that it seeks "to amend its pleadings to allege that the [] patent is unenforceable due to inequitable conduct in the submission of papers on or about August 15, 2007 by plaintiff Tailored Lighting, Inc. [] to the United States Patent and Trademark Office ("USPTO") to correct its entity status and pay maintenance fee deficiencies." (Docket # 133 at 1). According to Sylvania, TLI's filing contained false statements and misrepresentations that were material to the USPTO's acceptance of TLI's change in status.

Sylvania contends that the proposed amendment to its answer is necessary to conform its pleading to the evidence adduced through discovery. (*Id.*). TLI opposes the motion on the grounds that it is futile and untimely. (Docket # 141). Sylvania's motion was not filed until July 14, 2008 (Docket # 131) – over two years after the expiration of the deadline of March 17, 2006 provided in this Court's Scheduling Order for filing motions to amend. (Docket # 82).

In deciding a motion to amend filed after a court-ordered deadline for amending the pleadings, the court must balance the requirements of Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Rule 15(a) provides that once the time for amending a pleading as of right has expired, a

party may request leave of the court to amend, which the court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, under Rule 15, if the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *United States ex rel. Maritime Admin. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. at 182.

Rule 16(b) directs the court to enter a scheduling order that limits the time to amend the pleadings. Fed. R. Civ. P. 16(b)(1). Moreover, the rule also provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the [court]." Fed. R. Civ. P. 16(b); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d at 340.

In *Parker*, the Second Circuit addressed the showing required of a party moving to amend its pleadings after the time for filing such motions had expired. In that case, the court joined several other circuits in determining that "the Rule 16(b) 'good cause standard,' rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." 204 F.3d at 340 (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (*per curiam*) (considering Rule 15(a) without regard to Rule 16(b) would render scheduling orders meaningless); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) (court may require showing of good cause for motion to

amend filed after deadline set forth in scheduling order), *cert. denied*, 529 U.S. 1038 (2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (Rule 16 was drafted to provide court with control over its docket and to prevent disruption, and thus denying leave to amend for lack of good cause shown is not abuse of discretion); *Riofrio Anda v. Ralston Purina, Co.*, 959 F.2d 1149, 1154-55 (1st Cir. 1992) (finding that it was not an abuse of discretion to deny leave to amend pursuant to Rule 16, despite lenient standards of Rule 15)).

According to the Second Circuit, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340. *See Phaneuf v. Tenneco, Inc.*, 938 F. Supp. 112, 115 (N.D.N.Y. 1996) ("[i]n instances where . . . a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his or her neglect and delay") (internal quotation marks omitted) (quoting *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984)). Moreover, in deciding a motion to amend, the court must weigh the good cause shown for the delay against the prejudice imposed upon the non-moving party. *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46-47 (2d Cir. 1983). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id*. at 47 (quoting *Advocat v. Nexus Indus., Inc.*, 497 F. Supp. 328, 331 (D. Del. 1980)); *Phaneuf v. Tenneco, Inc.*, 938 F. Supp. at 115.

In the instant matter, Sylvania seeks to justify the timing of its motion by noting that the inequitable conduct defense it seeks to include is based upon events that occurred after

the deadline for filing amendments to the pleadings had expired.  When it learned of those events, it further maintains, it acted with reasonable dispatch in filing the instant motion.  TLI disagrees that Sylvania's delay should be excused.

In its proposed amended answer, Sylvania seeks to include additional "instances" of inequitable conduct based on TLI's August 15, 2007 submission to the USPTO of a petition to change its entity status to "large entity" and to pay the applicable maintenance fee deficiencies.[4] According to Sylvania, TLI's petition contained false statements and misrepresentations intended to deceive the USPTO.[5]

Although TLI filed the petition for a change in status on August 15, 2007, Sylvania represents that it did not learn of the petition until March 10, 2008, and did not receive disclosure of the records relating to the petition until May 8, 2008.  Less than one month later, on June 3, 2008, Sylvania deposed Scott Firmstone, General Manager of TLI, who filed the subject petition.  According to Sylvania, testimony offered by Firmstone provided the factual basis for its inequitable conduct allegations.  (Docket # 133).  Whether his testimony does or does not support the defense, I find that Sylvania has shown good cause for the filing of its motion to amend on July 14, 2008, approximately four months after it first learned of the existence of the August 2007 petition and within approximately one month after it conducted discovery concerning the circumstances of the petition.

---

[4] Sylvania notes that the petition was filed after it filed its answer challenging as inequitable conduct TLI's payment of small-entity maintenance fees.

[5] Specifically, Sylvania challenges TLI's representation in its petition that (1) it "recently" learned of the legal requirements justifying its application for a change in status from small to large entity and (2) the individual who submitted the petition had "confirm[ed]" that TLI had been unaware of the legal requirements and had paid the small entity fees mistakenly, but in good faith.  (Docket # 133-2 at ¶¶ 88, 90).

TLI also challenges the merits of Sylvania's proposed amended answer, arguing that the proposed defense will be futile. I disagree that such a determination can be made at this time. Rather, I find that Sylvania has sufficiently pled facts and circumstances as to the "seventh instance" of claimed inequitable conduct that, if proven, would constitute a proper subject of relief, namely, that Firmstone represented that he had confirmed that TLI had been unaware of the legal requirements and had acted in good faith, when in fact he had not confirmed those facts. *See United States ex. rel. Maritime Admin. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d at 1254; *T&N PLC v. Fred S. James & Co. of N.Y.*, 1991 WL 190581, *2 (S.D.N.Y. 1991) ("[d]efendant is not required to establish a probability it would prevail on the merits in order for the Court to grant its motion to amend") (citations omitted).

In contrast to the allegations in the "seventh instance," I do not find that Sylvania has pled the facts and circumstances of the "eighth instance" sufficiently to permit it to be included in the amended answer. In large measure, the eighth instance is duplicative of the seventh insofar as it challenges the petition's representation that Firmstone had confirmed that TLI had been unaware of the legal requirements and had acted in good faith. To this specific allegation, the eighth instance adds assertions that Hiscock & Barclay, TLI's attorneys in this matter, violated their duty of candor to the USPTO because they assisted in preparing the petition and a related one but did not disclose the fact of their assistance to the USPTO. Those allegations, in my judgment, are not sufficient to state a claim of inequitable conduct against Hiscock & Barclay or to state a claim against TLI separate from the seventh instance.[6]

---

[6] I also reject Sylvania's attempt to base this claim on TLI's purported failure to produce to it in discovery a copy of the petition – an act that, even if required by TLI's discovery obligations, does not involve the company's or counsel's duty of candor to the USPTO.

Finally, I find that Sylvania's proposed amended answer will not unduly prejudice TLI. Although the discovery period in this case has ended, any additional discovery with respect to the subject petition should be reasonably narrow in scope and not unduly burdensome. After all, discovery already has been conducted on the issue of whether TLI was properly entitled to small entity status. *See*, *e.g.*, *T&N PLC v. Fred S. James & Co. of N.Y.*, 1991 WL 190581 at *3 (inconvenience of opposing party does not satisfy showing of prejudice sufficient to deny motion to amend). *See also United States ex rel. Maritime Admin. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d at 1255 (burden of additional discovery alone insufficient to warrant denial of motion to amend); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (mere delay without demonstration of bad faith or undue prejudice insufficient to defeat motion to amend). Accordingly, Sylvania's motion for leave to file an amended answer is granted in part and denied in part.

### III. TLI's Motion to Compel Production of a 30(b)(6) Witness

The final motion before the Court is TLI's motion to compel the production of "a proper 30(b)(6) witness." TLI also requests an award of sanctions due to Sylvania's purported failure to produce properly prepared witnesses. (Docket # 147).

Under Rule 30(b)(6):

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matter for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will

> testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

"[U]nder Rule 30(b)(6), the deponent 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters.'" *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (quoting *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)). "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997) (quoting *United States v. Taylor*, 166 F.R.D. 356, 361, *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996)). The designee must be prepared "to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* (citations omitted). If the designee does not possess personal knowledge of the matters identified in the notice, the corporation on whose behalf the designee is testifying must prepare the designee so that he may provide "knowledgeable and binding answers for the corporation." *Gucci America, Inc. v. Exclusive Imports Int'l*, 2002 WL 1870293, *8 (S.D.N.Y. 2002) (quoting *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995)).

In its deposition notice, TLI identified seven broad topics about which it sought testimony from Sylvania's 30(b)(6) witnesses. The seven identified topics were:

> (1) Design of the accused products;
> (2) Technical specifications of accused products;
> (3) Marketing of the accused products;
> (4) Sales of the accused products;
> (5) Financial reporting concerning the accused products;
> (6) Sales of uncoated automotive lighting products of the same configuration as the accused products; and
> (7) Financial reporting concerning uncoated automotive lighting products of the same configuration as the accused products.

Although Sylvania objected to the topics as being overbroad, it produced for deposition six witnesses who collectively were responsive to the seven topics. TLI has challenged the adequacy of the testimony offered as to the first three topics. As to those topics, Sylvania produced four witnesses: Susan Callahan, who testified concerning the first topic; Michael Tucker and Craig Landcastle, who testified with regard to the second topic; and Laura Peach, who testified concerning the third topic. Transcripts of the three depositions in question have been provided to and reviewed by this Court. Considering the breadth of the subjects identified in the deposition notices, I find that the witnesses' collective testimony satisfied the requirements of Rule 30(b)(6). I therefore deny TLI's request for sanctions based upon the testimony provided by the above-identified witnesses.

Notwithstanding the witnesses' generally competent testimony, each was unable to answer several specific questions posed during his or her deposition. I agree with Sylvania that many of the questions that the witnesses could not answer could not reasonably have been anticipated given the breadth of the matters noticed. For this reason, this Court directed counsel for TLI to supplement its motion to identify specific questions which it contends fall within the

15

scope of the designated topics, but as to which it did not receive an adequate response from the witness. In response to this direction, TLI submitted a supplemental letter identifying broad topics on which it seeks testimony from the witnesses, accompanied in some instances by references to the deposition transcripts. Many of the listed topics are themselves so broad that they will again fail to permit counsel to ensure that the witnesses are prepared to answer specific questions on those topics.

I have reviewed the challenged deposition excerpts that are contained in the supplemental submissions and agree that two of the witnesses should be redeposed and prepared to answer certain questions that they could not in their earlier depositions. Those witnesses and deposition questions are as follows:

(1) Laura Peach – page 139, line 3 through page 143, line 3;
page 154, line 4 through page 155, line 19.

(2) Michael Tucker – page 30, line 17 through page 20;
page 38, lines 4 through 22;[7]
page 42, lines 5 through 10.[8]

Counsel may ask related follow-up questions that would be reasonably anticipated from the witnesses' testimony. Given the limited nature of the depositions, Sylvania may elect to have them conducted by telephone.

On this record, I deny TLI's request to redepose the witnesses concerning documents produced by Sylvania after their depositions. Without knowing the circumstances of their production, I cannot evaluate whether the request for testimony concerning the documents is

---

[7] If counsel for Sylvania believes that Craig Landcastle (the other witness as to the second topic in the deposition notice) competently testified concerning these areas, counsel may submit such testimony to the Court for review to make a determination as to the competence of that testimony.

[8] *See* n.7, *supra*.

reasonable.  Accordingly, TLI's motion to compel further testimony for Sylvania's 30(b)(6) witnesses is granted in part and denied in part.  Its motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, it is the Decision and Order of this Court that Sylvania's motion for a protective order precluding TLI from taking the deposition of attorney John D. Mitchell, Jr., Esq. **(Docket # 123)** is **DENIED**.  Such deposition shall be limited to the issues identified in this decision and shall be conducted within thirty (30) days of this Order.  It is my further Decision and Order that Sylvania's motion for leave to file an amended answer **(Docket # 131)** is **GRANTED in part and DENIED in part**.  The amended answer shall be served by no later than ten (10) days from entry of this Order, and all factual discovery relating thereto shall be completed within sixty (60) days of this Order.  Finally, it is the Decision and Order of this Court that TLI's motion to compel production of a "proper Rule 30(b)(6) witness" **(Docket # 148)** is **GRANTED in part and DENIED in part**.  The continued depositions shall be conducted within thirty (30) days of this Order.  TLI's motion for sanctions **(Docket # 148)** is **DENIED**.

**IT IS SO ORDERED.**

                                                        *s/Marian W. Payson*
                                                        MARIAN W. PAYSON
                                                  United States Magistrate Judge

Dated: Rochester, New York
       February  13 , 2009