UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAILORED LIGHTING, INC.,<br><br>                      Plaintiff,<br>          v.<br><br>OSRAM SYLVANIA PRODUCTS, INC.,<br><br>                      Defendant. | **DECLARATION**<br><br>Civil Action No. 04-CV-6435 MAT |

I, Donald R. Banowit, Esq., declare and state as follows:

      1.      I am an attorney and director of the law firm of Sterne, Kessler, Goldstein & Fox, PLLC, counsel for the defendant, Osram Sylvania Products, Inc. ("Sylvania"), and, as such, I am fully familiar with the facts and circumstances of this matter.

      2.      I make this declaration in support of Sylvania's Motion to Compel Hiscock & Barclay LLP (the "Hiscock Firm") to comply with a Subpoena *Duces Tecum* and *Ad Testificandum* (the "Subpoena", attached hereto as Exhibit A).

      3.      This suit centers on Tailored Lighting, Inc.'s ("TLI") allegation that Sylvania has infringed one or more claims of U.S. Patent No. 5,666,017 ("the '017 patent" or "patent-in-suit"). Complaint at ¶¶ 17, 24.

      4.      The accompanying motion to compel arises out of Sylvania's efforts to obtain discovery relevant to the seventh instance of inequitable conduct set forth in Sylvania's Affirmative Defenses and Counterclaims. *See* Second Amended Answer and Counterclaims ¶¶ 87-95. There, Sylvania alleges that TLI's General Manager, Scott Firmstone ("Firmstone"), made false statements to the United States Patent and Trademark Office ("USPTO") in

connection with an August 15, 2007 petition to correct TLI's false statement of small entity status and maintenance fee payment in the '017 patent.

5. On June 3, 2008, Sylvania deposed Firmstone, who signed the August 15, 2007 petition. Firmstone testified that he did not have personal knowledge of and did not investigate the bases for the statements he made to the USPTO.

6. Instead, Firmstone testified that "advice of counsel" from the Hiscock Firm formed the entire bases of his statements. Firmstone's testimony revealed that the Hiscock Firm did not simply provide legal advice, it evidently determined the facts underlying the August 15, 2007 petition and communicated those facts to Firmstone. Sylvania simply seeks to discover the basic facts that form the bases for the statements in the petition.

7. Finally, Sylvania does not seek discovery from the Hiscock Firm concerning its role as litigation counsel. Instead, Sylvania's discovery is tailored to inquire solely as to the Hiscock Firm's role as post-issuance prosecution counsel to TLI for the patent-in-suit.

### A. TLI'S FALSE CLAIM TO SMALL ENTITY STATUS

8. On March 4, 2005, nearly seven months after commencing this suit, TLI paid its eighth year maintenance fee for the patent-in-suit, claiming small entity status thereby entitling it to a reduced fee pursuant to 13 CFR 121.801 through 121.805.

9. At the time of TLI's payment of the small entity maintenance fee, it had a license agreement with a company employing more than 500 individuals. Having entered into this license, TLI was not entitled to small entity status when it paid the eighth year maintenance fee.

10. On October 24, 2006, Sylvania deposed TLI's Kevin McGuire and learned, for the first time, that TLI had licensed the patent-in-suit to a large entity, thus depriving TLI of is small entity status.

11.     TLI later produced documents to Sylvania showing that this license agreement was in effect at the time of TLI's March 4, 2005 payment of the eighth year maintenance fee, wherein it claimed small entity status.

12.     Sylvania promptly notified TLI of these facts when it served its draft First Amended Answer and Counterclaims on TLI on January 11, 2007, wherein it advised TLI that Sylvania would seek leave of court to allege that TLI's claim to small entity status was false and formed the basis for a sixth instance of inequitable conduct. Sylvania, with this Court's leave, filed its First Amended Answer and Counterclaims (the "First Amended Answer") on July 12, 2007.

13.     Both Sylvania's January 11, 2007 draft First Amended Answer and Counterclaims and its July 12, 2007 First Amended Answer and Counterclaims included its sixth instance of inequitable conduct based on TLI's false claims to small entity status.

### B.     TLI'S FALSE PETITION TO CORRECT SMALL ENTITY STATUS

14.     On August 15, 2007, over a month after Sylvania filed it First Amended Answer, and over seven months after TLI was given notice of its false claim to small entity status, TLI's General Manager, Firmstone, petitioned the USPTO to correct TLI's entity status. See August 15, 2007 petition (attached hereto as Exhibit B).

15.     There Firmstone stated:

- TLI was recently informed that the granting of a license under the ['017] patent to a company with more than 500 employees will change the status for the patent to one of a Large Entity;

- a limited license under the ['017] patent was granted by TLI prior to payment of payment year 8, but only for the very limited purpose of making and testing but not selling or distributing a product;

- TLI was not aware of the effect on maintenance fees of the granting of even the limited license [under the '017 patent]; and

3

- the fee [for the '017 patent] while mistakenly paid as a small entity was paid in good faith.

(Exhibit B).[1]

16. TLI did not provide a copy of the August 15, 2007 petition to Sylvania along with its filing. Sylvania only discovered the existence of the petition as the result of its counsel's March 2008 review of the USPTO file for the patent-in-suit.

C. **SYLVANIA'S ATTEMPTS TO SEEK DISCOVERY REGARDING THE AUGUST 15, 2007 PETITION**

17. Once Sylvania became of aware of the existence of the August 15, 2007 petition, Sylvania immediately requested production of the petition and any other correspondence with the USPTO. See Sylvania's March 10, 2008 letter to TLI (attached hereto as Exhibit C).

18. As soon as Sylvania received TLI's first production concerning the August 15, 2007 petition, Sylvania notified TLI that it would depose the individuals involved in TLI's petition to the USPTO. See Sylvania's March 12, 2008 letter to TLI (attached hereto as Exhibit D).

19. Because of TLI's delay in producing all of the documents relating to the August 15, 2007 petition, such depositions did not occur until nearly three months later.

20. On June 3, 2008, Sylvania took the deposition of Scott D. Firmstone, General Manager of TLI (who signed the August 15, 2007 petition).

21. When pressed on his statement in the petition that "the undersigned confirms and declares that TLI was not aware of the effect on maintenance fees of the granting of even the limited license [and] that the fee while mistakenly paid as a small entity was paid in good faith,"

---

[1] A similar petition, with similar statements, also was submitted to the USPTO by TLI on August 15, 2007 regarding U.S. Patent No. 5,418,419.

4

Mr. Firmstone testified that he did not have personal knowledge of the stated information, that he did not talk with anyone at TLI prior to making this statement, that his only conversations were with the Hiscock Firm and that he did not know whether the Hiscock Firm talked to anyone at TLI regarding the information contained in the August 15, 2007 petition. See Firmstone Transcript (attached hereto as Exhibit E, at page 54, line 7 to page 57, line 22).

22. Asked why he believed the August 15, 2007 petition was not false, Mr. Firmstone replied on about a dozen occasions that the basis of his statements in the petition was on "advice of counsel." (Page 19, line 5-7;  Page 24, line 4-7;  Page 30, line 1-4;  Page 30, line 10-12;  Page 31, line 11-14;  Page 44, line 21-24;  Page 44, line 25 – Page 45, line 6;  Page 45, line 23-24;  Page 46, line 6-9;  Page 48, line 1-3;  Page 52, line 24 – Page 53, line 5; and  Page 54, line 3 through 25.)

23. Elsewhere, Mr. Firmstone testified that the petition was drafted with the "advice of counsel." (Page 18, line 9-11;  Page 40, line 7-10;  Page 40, line 14-15;  Page 41, line 5-8;  Page 42, line 1-4;  Page 43, line 15-17;  Page 43, line 18-25;  Page 61, line 1-3;  Page 61, line 4-6; and  Page 69, line 13-19.)

24. During Mr. Firmstone's deposition, he identified that the "advice of counsel" came from the Hiscock Firm (*e.g.*, page 61, line 7 through 13).  Mr. Firmstone was unable to identify, however, what, if any, investigation was done by the Hiscock Firm in preparation of the petition or the source (person or record) or support (person or record) for the veracity of his statements in the petition.

25. On June 3, 2008, Sylvania also took the deposition of Kevin McGuire, President of TLI (who signed the credit card payment included with the August 15, 2007 petition).

26. At deposition, Mr. McGuire testified that he played no part in the drafting of the August 15, 2007 petition. See McGuire Transcript (attached hereto as Exhibit F, at page 492, line 21-23). Mr. McGuire also testified that Mr. Firmstone did not question him about any maintenance fee filings for the patent-in-suit. (Page 493, line 2-4). And, Mr. McGuire testified that the Hiscock Firm did question him about past maintenance fee filings. (Page 493, line 5-19).

### D. SYLVANIA'S SECOND AMENDED ANSWER AND SEVENTH INSTANCE OF INEQUITABLE CONDUCT

27. After Firmstone's deposition, Sylvania sought to amend its Answer and Counterclaims to include a seventh allegation of inequitable conduct based on that false petition.

28. On February 13, 2009, the Court granted Sylvania's Motion to Amend, and Sylvania filed its Second Answer and Counterclaims on February 23, 2009

29. In the seventh instance of inequitable conduct, Sylvania alleges that the August 15, 2007 petition submitted to the USPTO by TLI included false statements, that the inclusion of such false statements was material to the USPTO's acceptance of TLI's August 15, 2007 petition, and that the false statements were made with an intent to deceive the USPTO. Under applicable law, such conduct constitutes inequitable conduct and renders the '017 patent unenforceable.

30. In particular, Sylvania's seventh instance of inequitable conduct identifies two false statements contained in the August 15, 2007 petition.

31. First, Firmstone stated that "TLI was *recently* informed that the granting of a license under the patent to a company with more than 500 employees will change the status for the patent to one of a Large Entity." (emphasis added). On or about January 11, 2007 (the date

6

Sylvania served its proposed First Amended Answer that included the sixth instance of inequitable conduct), TLI was put on actual or constructive notice that by licensing the patent to a company with more than 500 employees changed the status for the patent to one of a Large Entity and that its small entity claim constituted a false statement to the USPTO.  Thus, when TLI stated it had "recently" learned of the change in entity status, it had in fact been informed at least seven months prior of that fact, if not earlier.

32.   Second, Firmstone stated that "the undersigned [Mr. Firmstone] *confirms* and declares that TLI was not aware of the effect on maintenance fees of the granting of even the limited license [and] that the fee while mistakenly paid as a small entity was paid in good faith." (emphasis added).  At deposition, Mr. Firmstone testified that he did not confirm that TLI was unaware of the effect on its small entity status by licensing the patent and did not confirm that the maintenance fee paid on March 4, 2005 was paid in good faith, though mistaken.  As such, Mr. Firmstone did not have personal knowledge, or any other basis, to "confirm and declare" the statements contained in the petition.

E.   **THE SUBPOENA TO THE HISCOCK FIRM**

33.   Given Mr. Firmstone's complete reliance on the Hiscock Firm's "advice of counsel" as the basis for believing the statements contained in the August 15, 2007 petition are true, Sylvania served a Rule 45 subpoena *Duces Tecum* and *Ad Testificandum* on the Hiscock Firm.  See Exhibit A.

34.   Sylvania's Subpoena was served on March 16, 2009 and had a return date of April 3, 2009.  On February 13, 2009 this Court ordered that all discovery relating to Sylvania's inequitable conduct defense (the seventh instance) be completed within sixty days.  The Subpoena was therefore served well-within the discovery period set by the Court.

35. The Subpoena seeks the production of documents from the Hiscock Firm relating to TLI's August 15, 2007 petition and documents relating to TLI's payment of maintenance fees for the patent-in-suit. See Exhibit A (the Subpoena, List of Requested Documents)

36. In addition, the Subpoena seeks to depose the Hiscock Firm on the issues concerning the August 15, 2007 petition and payment of maintenance fees for the patent-in-suit, including the Hiscock Firm's investigation into and communications with TLI regarding its small entity status and the drafting of the August 15, 2007 petition. See Exhibit A (the Subpoena, Schedule of Deposition Topics).

37. On March 18, 2008, two days after service of the Subpoena, TLI counsel wrote to this Court seeking the "direction and assistance" of Judge Payson and making a blanket objection to the deposition portion of the Subpoena on the grounds of attorney-client privilege. The Hiscock Firm did not articulate any objection to the Subpoena's request for the production of documents.

38. In a March 27, 2009 letter to Judge Payson, Sylvania responded to the concerns raised by the Hiscock Firm and, among other things, proffered a list of representative questions it might put to the Hiscock Firm at a deposition. (attached hereto as Exhibit G).

39. On March 31, the Hiscock Firm replied by letter. And, in an April 23, 2009 letter to counsel, Judge Payson indicated skepticism that parties "can reach a negotiated compromise of the their positions" concerning the Subpoena and invited Sylvania to file a motion to put the matter formally at issue.

I declare under penalty of perjury that the foregoing is true and correct.

    Executed at Washington, D.C. on May 5, 2009.

                                                       /s/Donald R. Banowit  
973092_4.doc                                      Donald R. Banowit, Esq.