# Exhibit D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAILORED LIGHTING, INC.,

              *Plaintiff*,

vs.

OSRAM SYLVANIA PRODUCTS, INC.,

              *Defendant*.

Civil Action No.
6:04-CV-6435-MAT-MWP

### TAILORED LIGHTING'S SECOND SUPPLEMENTAL RESPONSE TO SYLVANIA'S FIRST SET OF INTERROGATORIES (NOS. 3 AND 6)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff Tailored Lighting, Inc. ("Tailored Lighting") hereby supplements, but does not supercede, its response to defendant Osram Sylvania Products, Inc.'s ("Osram Sylvania") First Set of Interrogatories (Nos. 3 and 6) as follows:

#### Interrogatory No. 3

For each of the accused lamps, identify the value(s) ascertained by or for TLI (by measurement, calculation, or otherwise) for each variable and/or constant of the equation set forth in claim 1 of the '017 patent, the methodology by which such value and/or constant was ascertained, the person(s) employing such methodology, and when the value(s) were ascertained.

At least as early as August 2004, prior to commencement of the action, a visual inspection of the accused lamps, when lit and unlit, was made by Kevin McGuire, and the informed conclusion was reached that the optical properties of the lamp envelopes and filaments were the same for all of the accused lamps, that the coatings of all of the accused SilverStar lamps were the same, and that the coatings of all of the accused Cool Blue lamps were the same. These conclusions having been later confirmed by Osram Sylvania.

In its published marketing and promotional literature identifying all of the relevant lamps by a common description (*i.e.*, SilverStar or Cool Blue), Osram Sylvania made no representation that one model rather than another model provided different spectra during operation, so there was no indication that one model would operate differently than another model. To the contrary, both prior to and continuing after commencement of the action, Osram Sylvania does not distinguish among them in its published information. Inspection of samples of each of the accused lamps, absent one side-marker, led to the conclusion that the accused lamps appear to have identical or highly similar coatings, and all used tungsten halogen light sources. Osram Sylvania's discovery responses and Tailored Lighting's testing confirmed that similar if not identical spectra were produced for each model tested with each of the SilverStar and Cool Blue product lines.

Based on that conclusion and at least as early as August 2004, the light emissions of a sampling of the accused lamps were measured by Kevin McGuire and the data plotted and compared with daylight spectra. Subsequent to the filing of the action, and as recently as June through September 2007, Kevin McGuire and/or Meghan McGuire, individually or collectively, measured and plotted the light emissions of the accused lamps.

Data and attendant plots have been produced as documents Bates numbered, including, but not necessarily limited to, TLI02998 through TLI03024; TLI03063 through TLI03078; and TLI03108 through TLI03123, and are incorporated herein by reference.

In November 2007, Kevin McGuire again tested the H7ST and H7CB accused lamps. Only the H7 lamps were retested for this purpose, as Tailored Lighting remains convinced that its assumptions of similarity of the accused lamps is factually correct. The testing consisted of measuring the spectral output of the lamps using a commercially available spectral radiometer

SYLIB01\591168\5

- 2 -

that measured the output of a sample placed in an integrating sphere, recording the data in data point increments of ten nanometers using the procedures described in earlier responses, and calculating the transmission for the SilverStar and Cool Blue coatings by determining the quotient of the coated data spectra divided by the uncoated data spectra. The transmission of the coating for each of the SilverStar and Cool Blue lamps was obtained by breaking the lamps, and measuring in a spectrometer at the same increments the spectral distribution of a reference light source both with and without a coated envelope fragment in place, the measured transmission again being the quotient of the light with the fragment in place, divided by the light without the fragment in place.

The resulting data is below. Since the data shows that the measured and calculated transmissions are not identical, N necessarily is not equal to, but does approach, a value of 1. Based on this information, $S^*(l)$ was determined from a rewriting of the claimed formula as follows:

$$S^*(l) = \{[(T_c(l)-T_m(l)] \times S(l)N\}/(1-N)$$

**Cool Blue Lamps**

| Wavelength | D(l) | S*(l) | N | S(l) | Calculated T(l) | Observed T(l) |
|---|---|---|---|---|---|---|
| 400 | 0.1090036 | 0.482966345 | 0.99 | 0.134702939 | 0.800217082 | 0.773000738 |
| 450 | 0.2135504 | 1.168762145 | 0.99 | 0.255519514 | 0.836812001 | 0.790550626 |
| 500 | 0.3484668 | 0.965771417 | 0.99 | 0.418551781 | 0.832553565 | 0.809246356 |
| 550 | 0.4776706 | 0.927242667 | 0.99 | 0.569991619 | 0.809622633 | 0.763747679 |
| 600 | 0.5825777 | 1.765123940 | 0.99 | 0.750239885 | 0.776521911 | 0.752756769 |
| 650 | 0.6911996 | 3.891709705 | 0.99 | 0.902173883 | 0.768149244 | 0.722570492 |
| 700 | 0.8124547 | 5.710330785 | 0.99 | 1.021543219 | 0.795271936 | 0.733880034 |

**SilverStar Lamps**

| Wavelength | D(l) | S*(l) | N | S(l) | Calculated T(l) | Observed T(l) |
|---|---|---|---|---|---|---|
| 400 | 0.1044333 | 0.275806131 | 0.99 | 0.134702939 | 0.775285969 | 0.754763986 |
| 450 | 0.2156156 | 1.415956835 | 0.99 | 0.255519514 | 0.844904975 | 0.768859277 |
| 500 | 0.3514033 | 1.244019111 | 0.99 | 0.418551781 | 0.839543947 | 0.809547726 |
| 550 | 0.4794401 | 0.830677809 | 0.99 | 0.569991619 | 0.812621933 | 0.796886169 |
| 600 | 0.580731  | 0.911254333 | 0.99 | 0.750239885 | 0.774060436 | 0.761791575 |
| 650 | 0.6867344 | 1.723437379 | 0.99 | 0.902173883 | 0.761199656 | 0.741903533 |
| 700 | 0.8214445 | 4.115758629 | 0.99 | 1.021543219 | 0.804121131 | 0.763424564 |

[Chart: Calculated vs Observed Transmissions based on '017 — Cool Blue: Normalize Trans Cool Blue Calc; Transmission % Cool Blue Observed]

[Chart: Calculated vs Observed Transmissions based on '017 — SilverStar: Normalize Trans Silver Star Calc; Transmission % Silver Star Observed]

### Interrogatory No. 6

For each of the accused lamps, identify the color temperature and spectral power distribution of such lamp(s) ascertained by or for TLI, the methodology by which the color temperature and spectral power distribution was ascertained, the person(s) employing such methodology to ascertain the color temperature and spectral power distribution, and when the color temperature and spectral power distribution were ascertained.

The relevant data for the color temperatures and spectral power distributions of the accused lamps as ascertained by Tailored Lighting have been previously produced as documents Bates numbered, including, but not necessarily limited to, TLI02998 through TLI03024, TLI03063 through TLI03078, and TLI03108 through TLI03123, and are incorporated herein by reference. That data was obtained at least as early as August 2004, and as recently as June through September 2007, by Kevin McGuire and/or Meghan McGuire, who individually or collectively measured the spectra for each of the products using a commercially available

spectral radiometer that measured the output of a sample placed in an integrating sphere. As the collected data show, the color temperatures and spectral power distributions of the accused lamps will vary to some degree depending on the voltages applied to them, but regardless of the applied operating voltage, all are within the scope of Claim 1 of the '017 Patent.

* * *

## Verification

On behalf of Tailored Lighting, Inc. and in my capacity as President, I have read the foregoing supplemental responses to the Defendant's First Set of Interrogatories (Nos. 3 and 6). I do not have direct personal knowledge of every fact contained herein. The response was prepared with the assistance of Tailored Lighting's agents and representatives, and with the assistance and advice of counsel. The answers are based on records and information currently available. I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available. To the extent I do not have personal knowledge, I have relied on others to gather the responsive information. I declare under penalty of perjury that the foregoing is true and correct.

Signed this 30th day of November 2007.

Kevin P. McGuire

As to objections,

HISCOCK & BARCLAY, LLP

By: _____
Michael A. Oropallo
John D. Cook
300 South State Street
Syracuse, New York 13202-2078
Tel: (315) 425-2831
Fax: (315) 703-7367
E-Mail: moropallo@hiscockbarclay.com
E-Mail: jcook@hiscockbarclay.com

Ronald S. Kareken
Christopher E. Blank
2000 HSBC Plaza, 100 Chestnut Street
Rochester, New York 14604
Tel: (585) 325-7570
Fax: (585) 325-5458
E-Mail: rkareken@hiscockbarclay.com
E-Mail: cblank@hiscockbarclay.com

Attorneys for Plaintiff

Dated: November 30, 2007

## CERTIFICATE OF SERVICE

I, Michael A. Oropallo, as attorney for plaintiff Tailored Lighting, Inc., hereby certify that, on this 30th day of November 2007, I caused Tailored Lighting's Second Supplemental Response to Sylvania's First Set of Interrogatories (Nos. 3 and 6) to be served on the following via electronic mail, and thereafter by first-class mail, postage prepaid:

David K.S. Cornwell
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1100 New York Ave. N.W.
Washington, DC 20005

Donald W. O'Brien, Jr.
Woods Oviatt Gilman LLP
700 Crossroads Building
Two State Street
Rochester, New York 14614

_____
Michael A. Oropallo

SYLIB01\591168\5

- 8 -