# Exhibit P

H. Angus Macleod

Page 1

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

TAILORED LIGHTING, INC.,               ) 04-CV-6435-MAT-MWP
                                       )
              Plaintiff,               )
vs.                                    )
                                       )
OSRAM SYLVANIA PRODUCTS, INC.,         )
                                       )
              Defendants.              )

Monday, March 31, 2008

ORAL DEPOSITION of DR. H. ANGUS MACLEOD, held on March 31, 2008 at 9:00 a.m. at MARRIOTT UNIVERSITY PARK, 880 East Second Street, Tucson, Arizona, pursuant to the Rules of Civil Procedure.

Reported By:   Peggy A. Smith, CSR, RPR
               Certified Court Reporter No. 50726

Job No.:       186371

H. Angus Macleod

1  Q.  What do you mean by that?
2  A.  I mean that we are dividing the light into two
3 different streams as it were. Some that follows one path,
4 some that follows another path. We also divide them using
5 this N and the way in which we're dividing them depends on
6 whether you follow claim one or you follow the claim
7 construction. In either case, there's a redundancy which
8 drives the equation in the incorrect direction.
9  Q.  Does the type of coating that's contained on a
10 lamp envelope matter with regard to the formula?
11  A.  No. The formula is wrong. You won't be able to
12 save it by having a particular type of coating.
13  Q.  What is the correct form of the formula in your
14 opinion?
15  A.  The correct form would be what Brady suggests.
16  Q.  And that is what?
17  A.  That is that you take what you want and what
18 you've got and you take the ratio as a function of wave
19 length and that gives you the transmittances in terms of
20 wave length.
21  Q.  And you're saying that this formula doesn't do
22 that?
23  A.  It doesn't do that.
24  Q.  Using Brady's formula, how would you account for
25 the non-normal light?

H. Angus Macleod

Page 110

1  A. Well, it doesn't actually account for the
2  non-normal light. There would be -- what one would have to
3  do would be to take the overall performance that you want,
4  including the non-normal light and the light output from the
5  source, including the non-normal light and then you would
6  model a lamp with some software application and there are
7  plenty on the market and you would get the transmittance.
8  And it's essentially doing what Brady suggests.
9  You take what you want and you take what you've got and you
10 find out what you've got to do to modify what you have to
11 get what you want. And that's --
12 Q. How would you write a formula that accounted for
13 the non-normal light?
14 A. Well, I wouldn't write a formula. I would go and
15 buy a piece of software that gives me the performance of a
16 lamp. I'd put a coating on the envelope and I'd have a look
17 at it and the software would design that coating for me. No
18 problem.
19 Q. But isn't the software, in effect, a formula? A
20 very complicated one?
21 A. Well, if you're defining it in that way, then of
22 course. I agree with you, yes.
23 Q. And the software would account for the non-normal
24 light?
25 MR. BANOWIT: Objection.

1          THE WITNESS: Yes. Sorry.
2     BY MR. OROPALLO:
3          Q.   Now, in your report, you also refer to a Munder
4     patent?
5          A.   Yes.
6          Q.   How if at all does that invalidate the patent, in
7     your opinion?
8          MR. BANOWIT: Objection.
9          THE WITNESS: Well, it's a daylight lamp.
10    BY MR. OROPALLO:
11         Q.   Just the fact that it's a daylight lamp
12    invalidates the ''017 patent, in your opinion?
13         A.   It's part of what invalidates it. And it gives
14    the calculation technique. It gives a filter. It gives an
15    example of a real filter. I don't see what is in the ''017
16    that takes us any further.
17         Q.   Assuming that the formula doesn't work.
18         MR. BANOWIT: Objection.
19         MR. OROPALLO: Is that correct?
20         THE WITNESS: Well, even if the formula worked I
21    still don't see what it takes further, how it goes further
22    than the Munder.
23    BY MR. OROPALLO:
24         Q.   In your report you indicate that essentially --
25    and I can find it if you want, but that people have been