UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**TAILORED LIGHTING, INC.,**

　　　　　　　　　　　*Plaintiff*,

　　　　*vs*.

**OSRAM SYLVANIA PRODUCTS, INC.,**

　　　　　　　　　*Defendant*.

Civil Action No.
6:04-CV-6435-MAT-MWP

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**HISCOCK & BARCLAY, LLP**
*Attorneys for Plaintiff*
Tailored Lighting, Inc.
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2878
Tel: (315) 425-2831
Fax: (315) 703-7367
E-Mail:  moropallo@hblaw.com
E-Mail:  cblank@hblaw.com

Michael A. Oropallo
Christopher E. Blank
　*of Counsel*

## Table of Contents

**Page**

Table of Authorities ..................................................................................................... iii, iv

Preliminary Statement ...................................................................................................... 1

Standard of Review ........................................................................................................... 4

Argument .......................................................................................................................... 5

   I.   TLI has Produced Conclusive Evidence Showing Sylvania's Infringement of the '017 Patent by the Manufacture, Use and Sale of the Accused Products ................................... 5

       A.  Tests of the H7 Bulbs Unequivocally Demonstrate the Accused Products' Spectral Light Distribution and Color Temperature are Within the Ranges Claimed in the '017 Patent ........................................................................................................ 6

       B. The H7 bulbs Have an Envelope Enclosing a Substantially Centrally Disposed Filament and Including a Coating on a Surface Having a Transmittance in Substantial Accordance with the Stated Formula ........................................................ 8

  II.  Sylvania's Affirmative Defenses Alleging Inequitable Conduct are Insufficient as a Matter of Law ........................................................................................................ 8

       A.  Sylvania has Failed to Meet its Initial Threshold of Alleging Sufficient Facts ........... 9

       B.  Sylvania's Vague and Summary Claims are Insufficient for Unenforceability ......... 10

          1.  First Instance - The Alleged Prior Art References Were Disclosed ..................... 10

          2.  Second Instance - Fails Basic Threshold of Notice Pleading ............................... 12

          3.  Third Instance - The General Electric Infrared Reflecting Lamp was Disclosed . 12

          4.  Fourth Instance -The McCurdy's Lamp was made According to the '419 Patent and Therefore is no more Material than the '419 Patent Itself ................. 13

          5.  Fifth Instance - Figs. 23 and 24 Represent Uncontroverted Data Calculated from the Characteristics of the Lamp Illustrated in Figs. 19, 20 and 21 .............. 14

          6.  Sixth Instance - TLI was not Required to pay Large Entity Fees on the '017 Patent ..................................................................................................... 16

          7.  Seventh Instance - TLI Submitted its Petition Promptly Upon Becoming Aware of Sylvania's Allegations Regarding Entity Status which was Long After the Initial Fee was Paid as Confirmed by Mr. Firmstone ............................ 18

8.   Because None of Sylvania's Allegations have been Sufficiently Pled, nor are they Otherwise Compelling, the Totality of the Allegations Provides no more Justification for Unenforceability ........................................................................21

Conclusion ........................................................................................................................... 21

### Table of Authorities

**Cases** **Page**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) ........... 4

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557 (Fed. Cir. 1988) .................. 4

*Baxter Int'l v. McGaw, Inc., 149 F.3d 1321 (Fed. Cir. 1998)*…..……………………………12

*Cargill, Inc. v Canbra Foods Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007).................................... 8

*Corning Glass Works v. Sumitomo Electric USA Inc.*, 671 F.Supp. 1369, 1391 (S.D.N.Y. 1987), *aff'd*, 868 F.2d 1251 (Fed. Cir. 1989)......................................................................... 14

*D.H. Technology, Inc. v. Synergystex International, Inc.*, 154 F.3d 1333 (Fed. Cir. 1998)......... 17

*Ebay Inc. v. IDT Corp.*, 2009 U.S. Dist. LEXIS 75475 (W.D. Ark. Aug. 24, 2009) .................. 11

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ............................... 9,14

*Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327 (Fed. Cir. 2003)........................................................................................................ 8

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370 (Fed. Cir. 2004) ............................................................................................................................ 5

*Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354 (Fed. Cir. 2003) ............................. 15

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982 (Fed. Cir. 2007)............... 11

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed.Cir. 1986) ........................... 4

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988)................... 9

*Knoll Pharm. Co. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381 (Fed. Cir. 2004) ............................. 4

*Lemelson Med. v. Intel Corp.*, 64 U.S.P.Q.2d 1172, 1181 (D. Ariz. 2002)............................... 16,20

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Company, Inc.*, 439 F.3d 1335 (Fed. Cir. 2006) ........................................................................................................................................ 5

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................... 4

*McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897 (Fed. Cir. 2007).... 3

*Meyers v. Asics Corporation*, 78 F.3d 605 (Fed. Cir. 1996)......................................................... 4

*PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359 (Fed. Cir. 2005)...................... 5

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008)....... 2,10,11,21

*Tofasco of Am., Inc. v. Atico Intl. U.S.A., Inc.*, No. 2-07-CV-04120 (C.D. Cal. December 28, 2009) ........................................................................................................................................ 16

*Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.3d 1139 (Fed. Cir. 2003)........................................................................................... 18,19

**Statutes**

37 C.F.R. § 1.28 ................................................................................................................... 18,19

37 C.F.R. § 1.378 ..................................................................................................................... 18

35 U.S.C. § 112 ........................................................................................................................ 14

35 U.S.C. § 282 .......................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 56 .................................................................................................................... 1,4

Fed. R. Civ. P. 9 ........................................................................................................................ 21

Plaintiff Tailored Lighting, Inc. ("TLI") respectfully submits this Memorandum of Law in support of its Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## Preliminary Statement

This case is about a patent on an invention by Kevin McGuire that solved a long time problem of producing light from an incandescent light bulb that approximates a desired daylight. Many others before him had tried, but Mr. McGuire, then a young entrepreneur from Rochester, New York, was awarded U.S. Patent No. 5,666,017 ("'017 Patent") for such a light bulb. (Ex. N, '017 Patent).

In general terms, the '017 Patent describes and claims an incandescent light bulb having a coating on its envelope to produce a "desired daylight" that simulates ***both*** the color temperature ***and*** the spectral characteristics of a visible daylight spectrum. (Ex. N, '017 Patent).

Osram Sylvania Products, Inc. ("Sylvania") produces at least two types of automotive light bulbs that infringe the '017 Patent, which it makes and sells under its trademarks Cool Blue® and SilverStar®.  As can be seen by the exemplary spectra set forth below, both the SilverStar and Cool Blue bulbs emit a spectrum in accordance with the '017 Patent's claims, and the light they produce is undeniably similar to a daylight spectrum.

Because the Sylvania bulbs meet certain of the claims of the '017 Patent, TLI respectfully moves this Court for partial summary judgment on the issue of infringement for at least Sylvania's SilverStar H7ST and Cool Blue H7CB models (collectively, "H7 bulbs").[1]  The Court has previously construed the asserted claims of the '017 Patent, and TLI has produced

---

[1]   In order to limit the volume of information required by the production of similar data for all of Sylvania's accused devices, TLI has produced on this motion only such information for Sylvania's H7 model bulbs.  Moreover, because Sylvania claims all models of its respective accused SilverStar and Cool Blue bulbs have the same filaments and coatings, as well as other structural components (*See* Ex. P, Sylvania's Resp. to Interrog. No. 14), TLI seeks a declaration that the H7 bulbs are indicative of the relevant spectral characteristics (spectrum and color temperature) of all Sylvania's accused bulbs which, therefore, also infringe.

1

uncontroverted evidence that Sylvania's H7 bulbs meet the daylight spectra and color temperature claimed in the '017 Patent.  Therefore, Sylvania's accused products infringe as a matter of law.

The second ground for TLI's dispositive motion seeks summary judgment dismissing all of Sylvania's alleged "Eight Instances" of inequitable conduct.[2]  First and foremost, Sylvania has completely failed to identify a single fact to support such tenuous defenses,[3] and thus has failed in its burden to prove inequitable conduct by clear and convincing evidence as a matter of law.  Second, even assuming *arguendo* the Court considers there to be a question of inequitable conduct,[4] as summarily alleged, such conclusory assertions alone are insufficient to result in any finding of  inequitable conduct, and the requisite balancing against the drastic remedy of unenforceability of the '017 Patent, warrants dismissal of all of those defenses as a matter of law.

As one example, Sylvania claims TLI's patent should be declared unenforceable because of an alleged failure to pay a "large entity" maintenance fee on the '017 Patent.  First, Sylvania has failed to establish that TLI is a "large entity" for purposes of the '017 Patent, when the only so-called "license" granted to a "large entity" was to one *located outside the United States* and included only a permission to make and test, but not disclose or sell, experimental prototype bulbs.  Second, TLI sought permission of the United States Patent and Trademark Office ("PTO") to pay "large entity" maintenance fees, but only out of an abundance of caution because

---

[2]   Most of Sylvania's allegations are alleged "[o]n information and belief…."  Consequently, they are a legal nullity unless and until evidence is produced to support such amorphous claims.  To date, and discovery is now closed, Sylvania has failed to present such evidence.

[3]   Sylvania has failed to identify such in its Rule 26 mandatory disclosures, or in response to TLI's discovery demands for such proof, and despite having extended the discovery period through its numerous discovery motions.  *See* Ex. S, Sylvania's Response, to TLI's First Set of Interrogatories (Nos. 1-12) and specifically Sylvania's response to Interrogatory No. 12 which was never amended.

[4]   TLI is improperly then put in the untenable position of having to "prove a negative," thus unlawfully shifting the burden of proving inequitable conduct to TLI, when it is Sylvania's burden, and Sylvania has failed to identify its good faith or factual basis.  *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) ("The burden of proving inequitable conduct lies with the accused infringer….at least a threshold level of each element--i.e., both materiality and intent to deceive--must be proven by clear and convincing evidence.").

it was aware that Sylvania would attempt to engage in a proverbial "witch-hunt."  In its pursuit of just this one defense, and despite Sylvania's failure to articulate a viable theory, Sylvania engaged in multiple depositions, including a deposition of Hiscock & Barclay, LLP, TLI's trial counsel, that both TLI and Judge Payson questioned as a "fishing expedition."  As a second example, and once again without providing the factual basis for its serious allegations, Sylvania alleges TLI failed to disclose certain purported prior art, and that such claimed failure warrants unenforceability of the '017 Patent.  However,  if Sylvania had simply read the specification of the '017 Patent, it would have seen that the purported "failed disclosure," was actually disclosed.[5]

Suffice it to say, Sylvania continues its obstructionist behavior that this Court first noted in Sylvania's improper, premature and serial summary judgment motions (*See* Decision and Order [Dkt. No. 66 at p. 5]), has engaged in vexatious litigation, and notwithstanding TLI's formal requests, refuses to withdraw its baseless inequitable conduct allegations.  As Judge Newman of the Federal Circuit recently stated, inequitable conduct claims are "a plague" on patent litigation. *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897 (Fed. Cir. 2007) (Newman, J., dissenting)  For these reasons, the unsupported claims made by Sylvania should be silenced, and the Court should respectfully grant TLI's motion and dismiss the inequitable conduct defenses.

---

[5]   *See, e.g.,* Sylvania's claimed failure by TLI to disclose the GE bulb (Sylvania's Answer, Dkt. No. 162, ¶ 51) discussed by three patents incorporated by reference in the '017 Patent.  *See* U.S. Patent No. 5,079,683 at col. 6, lines 54-61, U.S. Patent No. 5,282,115 at col. 6, lines 21-28, and U.S. Patent No. 5,329,435 at col. 7, lines 8-15.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988); *see also Knoll Pharm. Co. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381, 1383 (Fed. Cir. 2004) ("In a patent case, as in any other, summary judgment may be granted when there are no disputed issues of material fact . . . or when the non-movant cannot prevail on the evidence submitted when viewed in a light most favorable to it.").  While the moving party bears the initial burden of demonstrating the absence of any material issue of fact, it "need not 'produce evidence showing the absence of a genuine issue of material fact; rather, the burden on the moving party may be discharged by showing . . . that there is an ***absence of evidence to support the nonmoving party's case*.**'"  *Avia*, 853 F.3d at 1560 (emphasis added).  Accordingly, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Bare assertions and conclusions regarding a party's understandings, beliefs, or assumptions are not sufficient to withstand a motion for summary judgment, and an opposing party may not rest upon mere allegation or denials of his pleadings; rather, he or she ***must present affirmative evidence*** showing that a genuine issue of fact exists for trial.  *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (emphasis added); *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

A patent carries a statutory presumption of validity under 35 U.S.C. §282, therefore a party seeking to prove invalidity or unenforceability must do so by ***clear and convincing evidence***. *See, e.g., Meyers v. Asics Corporation*, 78 F.3d 605 (Fed. Cir. 1996); *Hybritech Inc. v.*

*Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed.Cir. 1986) (emphasis added); *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Company, Inc.*, 439 F.3d 1335 (Fed. Cir. 2006).

<u>Argument</u>

**I.      TLI has Produced Conclusive Evidence Showing Sylvania's Infringement of the '017 Patent by the Manufacture, Use and Sale of the Accused Products**

Determining whether an accused product infringes a claim of a patent requires a two-step analysis: first, the court must construe the claim language; second, the construed claim must be compared to the accused device.  *See PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1362 (Fed. Cir. 2005).  For a finding of infringement, the comparison must result in each and every element of the claims being found in the alleged infringing device. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004).

The accused devices, Sylvania's H7 bulbs, have the physical structure required by claim 1 as construed by the Court by having an envelope, a light emitting element disposed within the envelope, and a coating disposed on a surface of the envelope. *See* Exs. J and K (Claims Charts comparing the construed claims with the accused devices).  At issue here is the operation of these components in cooperation with one another and the characteristics and quality of the light they produce.  The character of the light produced by the spectrum and color temperature claimed in the '017 Patent provides illumination that improves human vision as consistently touted by Sylvania.  For example, Sylvania commissioned a report from Rensselaer Polytechnic Institute that claims its Cool Blue lamps can increase driver's reaction times.  (Ex. M to Dkt. No. 197, OS0406733-OS0406786).  Sylvania continues to advertise that Cool Blue automobile headlamps provide "up to 25 percent whiter light and up to 25 percent more downroad visibility" and that SilverStar halogen headlights produce a "whiter, brighter light that can improve driving safety." (Ex. KK).

There is no factual issue as to the characteristics of the light the tungsten filament of the H7 bulbs produc, the transmittance of the coating disposed on the surface of the envelope, or the color temperature and spectral output of the H7 bulbs. *See* Exhibits J and K (claims charts for Sylvania's H7 bulbs).  Based on the Court's Order construing the claims (Dkt. No. 108), no genuine issues of material fact preclude summary judgment of infringement of at least claims 1 through 4 and 9 of the '017.

**A. Tests of the H7 Bulbs Unequivocally Demonstrate the Accused Products' Spectral Light Distribution and Color Temperature are Within the Ranges Claimed in the '017 Patent**

The only actual illumination evidence produced in this case are tests performed by TLI according to generally accepted methods for measuring the spectra and color temperatures for lighting sources.[6] (*See* Ex. Z, Fairchild Decl., pp. 5-6).  The results showed that the H7 bulbs produced continuous output across the range of visible wavelengths of light from 400 to 700 nm for a "desired daylight" spectrum,[7] as called for by the patent claims as construed by the Court. (Exs. J and K; Dkt. No. 108).  The results also show a correlation in color temperatures between the accused products and the construed claims.  *Id.*

In addition to these tests, Sylvania's own advertisements represent to the public that its product specifications for the H7 bulbs have color temperatures in the range of about 3500k to about 4000K. (*See* Exs. L and M).  The measured color temperatures for these bulbs are generally consistent with Sylvania's product specifications.  Attached hereto as Exhibits A, F, and G (for SilverStar), and B, H, and I (for Cool Blue), are the Spectral Power Distributions and color temperatures for the H7 bulbs made and sold by Sylvania when tested at three voltage

---

[6]   The accused products were placed in an integrated sphere and operated at the designated wattage at several voltages that are within the range of normal automobile operating voltages. (Ex. Z, Fairchild Decl., pp. 5-6.)

[7]   Daylight spectra at various color temperatures are well understood to those of skill in the art, and have been defined by the recognized standard setting body, the International Commission on Illumination ("CIE"). (Ex. CC).

levels, 12.0V, 12.8V and 13.5V.  The spectral characteristics of the H7 bulbs shown below are undeniably within the range of the desired daylight spectra as required by the claims of the '017 Patent, as they are within 30 percent of the value at each wavelength within the 400 to 700 nanometer range and, within that range, have a combined average within 10 percent of the desired daylight value. (Exs. J and K; Dkt. No. 108, Claim Construction Decision, p. 11).



The above graphs, and exhibits A-B and E-K, show that in the 400 to 700 nm wavelength range (the range the Court construed as being applicable), the measured spectra of the accused products are within the claimed tolerances of the normalized intensity of the respective desired daylight spectrum of the CIE standard color temperature.  No contradictory evidence was produced by Sylvania despite repeated requests by TLI and the Court's mandate.

## B. The H7 bulbs Have an Envelope Enclosing a Substantially Centrally Disposed Filament and Including a Coating on a Surface Having a Transmittance in Substantial Accordance with the Stated Formula

Sylvania's accused H7 products have filament light-producing elements that are "substantially centrally disposed" as that term was construed by the Court as meaning "at or near" the center of the envelope. (Dkt. No. 108, Claim Construction Decision, p. 13). Specifically, exhibits L and M show the structural component configuration of the H7 bulbs, as retrieved from Sylvania's website, as including an envelope enclosing a filament and having at least one coating. *See* Exs. J and K (claim charts showing satisfaction of the claim elements by the H7 bulbs); *See also* Ex. P, Sylvania's Resp. to Interrog. No. 14 (identifying the H7 bulb coatings).

The claimed formula describes the proportionality of the normal and non-normal light emanating from the bulb and illuminating the target. Because the H7 bulbs produce a daylight spectral distribution, as described above, the Sylvania coatings necessarily have a transmittance in substantial accordance with the claimed formula. (Ex. Z, Fairchild Decl., p.7 ("If, for example, a bulb produces a daylight distribution, has a tungsten filament, and a coated envelope, then its properties will necessarily be described by the equation in claim 1.").

## II. Sylvania's Affirmative Defenses Alleging Inequitable Conduct are Insufficient as a Matter of Law

Sylvania has made eight separate allegations of inequitable conduct. To state a claim for inequitable conduct, a party must allege that a plaintiff: (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [United States Patent and Trademark Office]. *Cargill, Inc. v Canbra Foods Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007). Inequitable conduct, "while a broader concept than fraud, must be pled with particularity" pursuant to Rule 9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC,*

350 F.3d 1327, 1344 (Fed. Cir. 2003).   Accordingly, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312 (Fed. Cir. 2009).  Additionally, while Rule 9(b) allows malice, intent, knowledge, and other conditions of a persons mind [to] be alleged generally, "Federal Circuit precedent…requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id*. At 1327.  "In sum, to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific ***who, what, when, where and how*** of the material misrepresentation or omission committed before the PTO." *Id*. (emphasis added).

In this case, not only has Sylvania merely set forth general and summary accusations, it has done so "[o]n information and belief."  That is insufficient and each of Sylvania's eight allegations should be dismissed as a matter of law. *Id.*

### A.  Sylvania has Failed to Meet its Initial Threshold of Alleging Sufficient Facts

The Court should summarily dismiss Sylvania's instances of alleged inequitable conduct as it has failed to disclose the factual basis for its claims, despite TLI's demands for such information.  To meet the heightened standard of pleading, Sylvania must allege ***facts*** showing that material information was withheld with the specific intent to deceive the PTO, and it must do so by ***clear and convincing evidence***. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (holding even gross negligence insufficient to prove intent to deceive).   Before ever reaching whether Sylvania has met such a heightened pleading requirement, TLI submits it is axiomatic that this Court must first ascertain whether Sylvania has

identified *any facts* in support of its claimed defenses.  TLI submits Sylvania has failed even in this threshold requirement.

Other than the bare assertions set forth in its Answer, Sylvania has shirked its obligation and failed to provide TLI with the purported *facts* that support its speculative allegations. Sylvania makes accusations that the '017 Patent should be held unenforceable, but has failed to identify a single fact to support such claims, let alone the specific *who, what, when, where and how.*  TLI questioned such assertions when made by Sylvania, demanded Sylvania produce the evidence it relies upon[8] and, when none was produced, requested Sylvania withdraw its affirmative defenses. (*See* Ex. JJ).

### B.  Sylvania's Vague and Summary Claims are Insufficient for Unenforceability

Even assuming *arguendo* there is a question as to these facts, such summary assertions are insufficient as a matter of law, as "the court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable...Thus, even if a threshold level of both materiality and intent to deceive are proven by clear and convincing evidence, the court may still decline to render the patent unenforceable." *Star Scientific*, 537 F.3d. at 1365 (citation removed).

In short, drawing every possible inference in Sylvania's favor, its asserted defenses fail as a matter of law, and TLI is entitled to summary judgment dismissing them.

### 1.  First Instance – The Alleged Prior Art References Were Disclosed

Contrary to Sylvania's bare assertions that TLI failed to disclose U.S. Patent Nos. 3,757,103, 4,4458,176, and 5,060,118, "The Chromolux Report" publication, and the Chromolux

---

[8] *See* Ex. S, Interrogatory No. 12 which includes a request for a description of "the facts that Sylvania believes proves or helps prove (either directly or circumstantially) [each] affirmative defense...."  Sylvania's only response to this Interrogatory, which was never amended, was to refer to a list of alleged prior art documents provided in connection with its response to Interrogatory No. 7.

Bulb, Ushio MR-16 Reflector Lamp, and Hi-Lux Lamp products during the prosecution of the '017 Patent (Dkt. No. 162, ¶¶ 35-42), these references were cited during prosecution of the '419 Patent which was incorporated by reference in the '017 Patent's specification. *See* Ex. II, Declaration of Kevin P. McGuire; *See also Ebay Inc. v. IDT Corp.*, 2009 U.S. Dist. LEXIS 75475 at *8 (W.D. Ark. Aug. 24, 2009) ("[A]ny prior art references and/or rejections that are part of the file history of the parent application are considered when examining the continuation application. The applicant is under no duty to resubmit such information in the continuing application. Therefore, it is not inequitable conduct for an applicant not to resubmit information that is already before the PTO in the parent application.")

Furthermore, the references themselves are immaterial as the Examiner found that the spectral distribution of the lamp as claimed in the '419 Patent was different from the light produced by each of the cited references.  Accordingly, each of the references did not produce a daylight spectrum and therefore was not deemed material enough to reject any claims of the '419 Patent despite being directly considered by the Examiner.

Finally, Sylvania has not alleged any facts supporting its bare allegation that any of the references was material to the prosecution of the '017 Patent and not cumulative. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,* 488 F.3d 982, 1000 (Fed. Cir. 2007) ("Information cumulative of other information already before the Patent Office is not material.").  Thus, the ***only*** reasonable inference to be drawn is that the applicant, Mr. McGuire, deemed the references immaterial to the prosecution of the '017 and no more material than the '419 patent itself. *See Star Scientific* 537 F.3d at 1366 ("…the inference [of intent to deceive] must…be the ***single most reasonable inference*** able to be drawn from the evidence…") (emphasis added).

### 2.  Second Instance – Fails Basic Threshold of Notice Pleading

Sylvania's pleading at Dkt. No. 162, ¶¶ 43-45 states only that "statements characterizing prior art and/or arguing the patentability of the claims over the prior art" were made with intent to deceive during the prosecution of the '419 Patent rendering the '419 Patent, and apparently by extension, but without factual or legal support, the '017 Patent, unenforceable. *See Baxter Int'l v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) ("...where the claims are subsequently separated from those tainted by inequitable conduct through a divisional application, and where the issued claims have no relation to the omitted prior art, the patent issued from the divisional application will not also be unenforceable due to inequitable conduct committed in the parent application.")

Without any specific ***facts*** as to what statements were made, TLI is at a total loss as to the basis for Sylvania's assertion.  Despite Sylvania having amended its Answer to include this affirmative defense, Sylvania has failed to provide even a *prima facie* showing and the egregious assertion of this baseless second instance of alleged inequitable conduct should be summarily denied by the Court.

### 3.  Third Instance - The General Electric Infrared Reflecting Lamp was Disclosed

Sylvania's third instance of alleged inequitable conduct is based upon an assertion that TLI failed to disclose an infrared reflecting lamp made by GE that it asserts has all of the "physical elements" of the claimed invention. (Dkt. No. 162, ¶ 51).  Once again, the reference cited by Sylvania was properly disclosed during prosecution as using the GE lamp as part of an overall apparatus to do color matching is explained in detail in the specification of each of the three prior McGuire patents that are incorporated by reference in the specification of the '017

Patent: U.S. Patent No. 5,079,683 at col. 6, lines 54-61, U.S. Patent No. 5,282,115 at col. 6, lines 21-28, and U.S. Patent No. 5,329,435 at col. 7, lines 8-15.

Even further, Sylvania has again failed to allege *facts* showing that the GE lamp is material. Sylvania only cites the lamp for including "a light producing element substantially centrally disposed within a lamp envelope and an infrared reflective coating disposed on at least one surface of the lamp envelope." (Dkt. No. 162, ¶ 46). These elements were well known in the art and present in numerous references that were before the Examiner. The GE lamp, and Sylvania, are silent with respect to the claim limitations relating to, *inter alia*, color temperature, spectral light distribution, and transmittance. Of Sylvania's experts, only Mr. Cochran makes any mention of the GE lamp, and that is a fleeing reference in one paragraph of his expert report, which also fails to identify *facts* or otherwise support the alleged materiality of the lamp. (See Ex. AA, Cochran Report, pp. 10-11).

Accordingly, Sylvania has again failed to meet the threshold pleading requirements and this affirmative defense should be denied by the Court.

### 4. Fourth Instance – The McCurdy's Lamp was made According to the '419 Patent and Therefore is no more Material than the '419 Patent Itself

Sylvania alleges that a lamp used at McCurdy's more than one year prior to the filing date of the '017 Patent falls within the scope of the '419 Patent and therefore somehow renders the '017 Patent unenforceable. (Dkt. No. 162, ¶¶ 56-56). Initially, Sylvania's assertion that the lamp falls within the scope of the '419 Patent inherently admits that any lamp used at McCurdy's is cumulative, at best, to the '419 Patent itself, which did not provide the basis for any double patenting rejection and was clearly disclosed to the PTO as prior art during prosecution of the application that lead to the '017 Patent. Once again, Sylvania fails to fill in this gap by pleading *facts* as to "'why' the withheld information is material and not cumulative, and 'how' an

examiner would have used this information in assessing the patentability of the claims." *Exergen,* 575 F.3d at 1329-1330.  Of course, Sylvania cannot do so because not even the '419 Patent itself was material enough to the Examiner to be a basis for rejecting the claims of the '017 Patent.

This is just another affirmative defense in a series of "red herrings" that Sylvania has raised but not pursued, yet refuses to withdraw.  Not only is there no suggestion that evidence was withheld, but, once again, Sylvania completely fails to allege any ***facts*** tending to show why or how such a reference is relevant to the '017 Patent or its claims. *See Exergen,* 575 F.3d at 1329-1330.   Accordingly, the Court should also deny this completely baseless affirmative defense.

### 5.   Fifth Instance - Figs. 23 and 24 Represent Uncontroverted Data Calculated from the Characteristics of the Lamp Illustrated in Figs. 19, 20 and 21

Sylvania further alleges that the lamp illustrated in Fig. 19, 20 and 21 was not reduced to practice and that, therefore, Figs. 23 and 24 purporting to present spectral transmission of the coating and spectral distribution, respectively, of the lamp shown in Figs. 19-21 are somehow misleading. (Dkt. No. 162, ¶¶ 66-78).  However, Sylvania again misses the mark.  The relevant inquiry is whether the disclosure complies with the requirement of 35 U.S.C. § 112. *See Corning Glass Works v. Sumitomo Electric USA Inc.*, 671 F.Supp. 1369, 1391 (S.D.N.Y. 1987), *aff'd*, 868 F.2d 1251 (Fed. Cir. 1989) ("There is no legal requirement that all of the examples in the patent specification actually be reduced to practice before the filing of the application; it is only required that the specification contain a disclosure which enables those skilled in the art to practice the invention.")

Of course, Sylvania fails to identify how or why it feels Figs. 23 and 24 represent measured data, let alone how it is purportedly material to the prosecution of the '017 Patent.  In

fact, there is no evidence that the Examiner relied upon, or was confused by, Figs. 23 and 24. Moreover, nowhere in the specification of the '017 Patent does it say that Figs. 23 and 24 represent data measured from an actual lamp.  Considering the fact that other figures are described as representing measured output, including the description of Fig. 6, for example, which includes "a graph of the ***actual*** output of a lamp assembly produced by..." ('017 Patent, col. 2, lines 54-56) (emphasis added), to the extent there is any ambiguity, the absence of such language would infer Figs. 23 and 24 represent calculated data.

Mr. Cochran's main argument in defense of Sylvania's position is that "McGuire and Greenwald have specifically used the term 'produced' in the past tense, which leads the reader to believe that the information provided in Fig. 24 is data that has been 'produced' from results of testing the lamp described in the claims of the '017 patent." (Ex. AA, Cochran Rep., p. 12). However, when read in the context of the paragraph, including the first sentence which states "Fig. 24 is the spectral output of the rays 672, 674, 676 and 678 et seq. which ***are produced by*** combining filament 602, coating 620, and lamp envelope 604 in the precise manner described," ('017 Patent, col. 22, lines 46-49) (emphasis added) the meaning should be apparent.  In other words, if the filament coating and envelope are combined in the manner described, the spectral output would appear as shown in Fig. 24.  Even further, Sylvania has not plead ***facts*** nor produced admissible evidence tending to show that the spectral distribution would be other than as shown.  Accordingly, Sylvania's reliance on *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354 (Fed. Cir. 2003), where experiments actually performed, but that were reported as inconsistent results, is misleading.  Further, in Hoffman, the results were used to argue for patentability and the record is clear that Hoffman failed to disclose all of its results, some of

which were contrary to the arguments made.  In the present case, the data was never the subject of any argument before the PTO, further evidencing its immateriality.

For these reasons alone, TLI respectfully requests that the Court deny this affirmative defense.

### 6.  Sixth Instance - TLI was not Required to pay Large Entity Fees on the '017 Patent

In its sixth instance of alleged inequitable conduct, Sylvania asserts that a small entity maintenance fee was incorrectly paid on the '419 Patent because the '419 Patent was licensed to a large entity. (Ex. V).  Sylvania then argues, without any basis in fact or law, that the grant of the license to the '419 Patent somehow disqualified TLI from paying small entity maintenance fees *on the '017 Patent* such that the small entity maintenance fee payment of March 4, 2005 constituted inequitable conduct rendering the '017 Patent unenforceable. (Dkt. No. 162, ¶¶ 79-86).  While TLI disputes these unsupported allegations, even if they were true, they are insufficient to form a basis for inequitable conduct, let alone the unenforceability of the '017 Patent.

Courts have long recognized the low materiality of any misrepresentation related to an entity's status. *Lemelson Med. v. Intel Corp.*, 64 U.S.P.Q.2d 1172, 1181 (D. Ariz. 2002) ("false statements about claims are much more material than ones that are independent of the patent claims...").  In such cases, courts have required that defendants prove a concomitant high level of intent, and even then when balanced against such a drastic remedy have declined to apply the severe penalty of unenforceability. *Tofasco of Am., Inc. v. Atico Intl. U.S.A., Inc.*, No. 2-07-CV-04120, slip. op. at 4 (C.D. Cal. December 28, 2009) (holding patent not unenforceable despite threshold showing of clear and convincing evidence of intent to deceive).  For the following

reasons, along with the failure of Sylvania to specify the facts upon which it relies, TLI is entitled to summary judgment on this defense.

First, the license is inapplicable because it involved only the '419 Patent, and any "divisions, reissues, **continuations**, reexaminations, renewals and extensions thereof, and which appendix may be amended from time to time by a written agreement signed by both TLI and [the Licensee]." (Ex. V, TLI03180-TLI3190) (emphasis added). Significantly, the '017 Patent is a **continuation-in-part** of U.S. Patent No. 5,569,983 which is a **continuation-in-part** of the '419 Patent and, as such, necessarily added subject matter not disclosed in the earlier non-provisional applications. (MPEP § 201.08). Accordingly, the '017 Patent, which had **already issued** at the time of the license, was explicitly excluded from the license, and the license was never amended to include the '017 Patent. Therefore, TLI remains a small entity as to the '017 Patent, and was not required to pay a large entity maintenance fee on the '017 Patent.

Second, assuming *arguendo* that TLI was required to pay a large entity maintenance fee on the '017 Patent, TLI was unaware of this requirement, nor were its representatives aware that the license may cause a change in entity status.[9]   Accordingly, Sylvania has failed as a matter of law to set forth a *prima facie* case in this regard, and its assertion should be dismissed.

Third, although the Federal Circuit has recognized the submission of a fraudulent declaration or affidavit can give rise to inequitable conduct in certain circumstances, it has not held that the failure to pay the proper maintenance fee renders a patent lapsed. *See generally D.H. Technology, Inc. v. Synergystex International, Inc.*, 154 F.3d 1333 (Fed. Cir. 1998); *see also,* MPEP § 509.03 ("A maintenance fee improperly paid as a small entity where small entity

---

[9] Sylvania implicitly acknowledges such at Dkt. No. 162, ¶ 89 ("On information and belief, on or about January 11, 2007, TLI was informed by Hiscock & Barclay that the granting of a license under the patent to a company with more than 500 employees will change the status for the patent to one of a Large Entity.").

status has been established but is no longer appropriate will be treated as a matter under 37 C.F.R 1.28(c) and will not be considered to involve expiration of the patent under 37 CFR 1.378.")

Fourth, and even assuming a change in entity status, TLI's good faith payment of the large entity maintenance fee on August 15, 2007, made out of an abundance of caution and in an effort to avoid Sylvania's vexatious litigation on this point, remedied any failure to pay the large entity fee in 2005. *See Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.3d 1139 (Fed. Cir. 2003) (holding "[t]he submission of the deficiency fee payment, when accepted by the PTO, is effective to correct the patentee's error.").

### 7. Seventh Instance – TLI Submitted its Petition Promptly Upon Becoming Aware of Sylvania's Allegations Regarding Entity Status which was Long After the Initial Fee was Paid as Confirmed by Mr. Firmstone

Having failed to set forth even a *prima facie* case of inequitable conduct with respect to the payment of the maintenance fee itself, Sylvania next alleges that TLI engaged in inequitable conduct by stating in the petition enclosing the maintenance fee payment that (1) it was recently informed of the alleged change in entity status and (2) Mr. Firmstone confirmed and declared that TLI was not aware of the effect of the License on entity status at the time of the initial small entity maintenance fee payment and that the prior maintenance fee payment was made in good faith. (Dkt. No. 162, ¶¶ 87-95). Both arguments lack merit.

Despite Sylvania's assertion in its Answer (Dkt. No. 162 ¶ 89), TLI was not informed of Sylvania's claim of inequitable conduct with respect to entity status until February 9, 2007 at the earliest, with all inferences drawn in Sylvania's favor. (*See* Dkt. No. 179, Exhibit I). In any event, the time period in question is approximately six months as compared to the four year period between maintenance fee payments. In fact, the payment for any arrears was the same in January of 2007 as it was in August of 2007 and as it would have been until the next

maintenance fee payment was due in March, 2009.  While TLI remains a small entity with respect to the '017 Patent, the ***only*** reasonable inference is that TLI decided to pay the large entity fees out of an abundance of caution and to avoid the motion practice and protracted discovery that has ensued despite TLI's efforts.  Even ignoring the obvious lack of alleged ***facts*** tending to show deceptive intent (the evidence actually shows that TLI paid the higher fees to avoid even an appearance of deception), Sylvania does not provide any admissible evidence, despite having taken the extraordinary measure of deposing the Hiscock & Barclay firm, or providing any legal authority supporting its proposition that the PTO relied on TLI's assertion that it was "recently" informed of the PTO rules affecting its entity status, or that TLI's statement was material in any way.[10]

Apparently conceding that each of the statements made in the August 15, 2007 petition was in fact true, Sylvania instead argues that Mr. Firmstone did not personally know that all of the facts contained in the petition were true.  However, Sylvania fails to allege ***facts*** beyond conclusory statements made "on information and belief," and despite Sylvania's attempts to "manufacture" evidence through vexatious litigation tactics, that any statement made was false.  Accordingly, while Sylvania could have challenged the veracity of the factual statements, it has tellingly chosen not to.

In fact, Mr. Firmstone did unequivocally confirm at his deposition that he believed all of the statements were true just as he did when he signed the statement confirming and declaring such. (Ex. Y, Firmstone Depo. p. 48 (Q.  Do you believe the statements made in the letter are true?  A.  Yes.)).  Specifically, the allegation in Dkt. No. 162, ¶ 91 that Mr. Firmstone did not independently confirm that TLI was not aware of the effect on maintenance fees of the license in

---

[10] Tellingly, Sylvania has not cited any authority holding that the PTO considers material how "recent" the patentee learned of its error in maintenance fee payment based on incorrect entity status. *See also Ulead*, 351 F.3d at 1149-1150 ("...any paper submitted under § 1.28(c) [is] placed in the  file without review.").

2005, in addition to once again being forced to "prove a negative," is belied by Sylvania's earlier assertion in Dkt. No. 162, ¶ 89 that TLI was not informed that the granting of the License could change entity status until early 2007.

Sylvania's only other assertion is that Mr. Firmstone did not have personal knowledge that the earlier maintenance fee payment was made in good faith.  While Sylvania fails to allege *facts* tending to show that the maintenance fee payment was not made in good faith, the evidence also is to the contrary:

> Q.   Further down in that paragraph you say "the fees while mistakenly paid as a Small Entity were paid in good faith".  Do you see that?
> A.   Yes.
> Q.   What do you mean by good faith?
> A.   They were paid as required.
> Q.   What do you mean as required?
> A.   They were paid on time in good faith.
> ...
> Q.   Okay. What's your basis for believing that the maintenance fee payments were paid as required?
> A.   We were licensed as a Small Entity and a Small Entity fee was due and we paid it in good faith.

(Ex. Y, Firmstone Depo. p. 32, lines 13-25 – p. 33, lines 1-12).  Accordingly, Mr. Firmstone had no reason to confirm that which was already within his personal knowledge and Sylvania has filed to alleged any *facts* tending to show that any statement included in the petition was false, material, or made with intent to deceive.

Notwithstanding that Sylvania's allegations are completely baseless and the evidence actually shows no wrongdoing or attempt to avoid paying the large entity fee on the part of TLI, holding the '017 Patent unenforceable would be a drastic remedy and totally disproportionate to any (in this case, none) wrong done. *See Lemelson* 64 U.S.P.Q.2d at 1181 ("Mr. Lemelson's attempts to avoid paying large entity fees were certainly wrong, but holding the patents to be unenforceable as a remedy for such behavior strikes the court as totally disproportionate to the

wrong done....it is a rather 'draconian proposition' to 'irretrievably extinguish an inventor's patent rights' based on a error in payment of small entity fees") (citations removed).

### 8. Because None of Sylvania's Allegations have been Sufficiently Pled, nor are they Otherwise Compelling, the Totality of the Allegations Provides no more Justification for Unenforceability

Recognizing the failure of each instance of alleged inequitable conduct, Sylvania attempts to argue that the cumulative effect of each alleged instance, in and of itself, constitutes inequitable conduct. *See Star Scientific, Inc.*, 537 F.3d at 1367 ("If a threshold level of intent to deceive *or* materiality is not established by clear and convincing evidence, the district court does not have any discretion to exercise and cannot hold the patent unenforceable regardless of the relative equities or how it might balance them."). As shown above, Sylvania has failed to meet its initial threshold of alleging sufficient facts required by Fed. R. Civ. P. 9 on both prongs and for each instance of alleged inequitable conduct and, accordingly, TLI respectfully requests that the Court reject Sylvania's allegations in this defense.

## <u>Conclusion</u>

For the reasons stated above and in the accompanying Statement of Facts, TLI respectfully requests that the Court grant its Motion for Partial Summary Judgment and award such other and further relief as the Court deems just and proper.

Dated:  March 1, 2010                         **HISCOCK & BARCLAY, LLP**

                                              By:  ___ s/ Michael A. Oropallo _____
                                                  Michael A. Oropallo
                                                  One Park Place 300 South State Street
                                                  Syracuse, New York 13202-2078
                                                  Telephone (315) 425-2831
                                                  Facsimile (315) 703-7367
                                                  E-Mail: moropallo@hblaw.com

                                                  Christopher E. Blank
                                                  2000 HSBC Plaza, 100 Chestnut Street
                                                  Rochester, New York 14604
                                                  Telephone (585) 295-4308
                                                  Facsimile (585) 295-8440
                                                  E-Mail: cblank@hblaw.com

                                                  Attorneys for Plaintiff
                                                  *Tailored Lighting, Inc.*

## Certificate of Service

I, Michael A. Oropallo, as attorney for Plaintiff Tailored Lighting, Inc., hereby certifies that, on this 1st day of March 2010, I caused Tailored Lighting's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment to be electronically filed with the Clerk of the District Court for the Western District of New York using the CM/ECF system, which sent notification of such filing to the following:

Donald R. Banowit                      Donald W. O'Brien, Jr.
Sterne, Kessler, Goldstein & Fox P.L.L.C.   Woods Oviatt Gilman LLP
1100 New York Ave. N.W.               700 Crossroads Building
Washington, DC 20005                  Two State Street
                                      Rochester, New York 14614


                        s/ Michael A. Oropallo
                        Michael A. Oropallo