UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**TAILORED LIGHTING, INC.**,

                *Plaintiff*,
*vs*.

**OSRAM SYLVANIA PRODUCTS, INC.**,

                *Defendant*.

Civil Action No.
6:04-CV-6435-MAT-MWP

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

 

**HISCOCK & BARCLAY, LLP**
*Attorneys for Plaintiff*
Tailored Lighting, Inc.
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2878
Tel: (315) 425-2831
Fax: (315) 703-7367
E-Mail:  moropallo@hblaw.com
E-Mail:  cblank@hblaw.com

Michael A. Oropallo
Christopher E. Blank
  *of Counsel*

**Preliminary Statement**

Plaintiff Tailored Lighting, Inc. ("TLI") submits this Memorandum of Law in opposition to defendant Osram Sylvania Products, Inc,'s ("Sylvania") Motion to Strike. Sylvania's motion is nothing more than a "second bite at the apple," and a transparent attempt both to reargue its prematurely filed summary judgment motions and to extend this litigation.[1] Sylvania should be fully aware that all of the *measured* values set forth in exhibits supporting TLI's motion for partial summary judgment ("Motion") were previously produced. To the extent any "new" graphics have been produced, they are based on prior-disclosed facts, information and/or methodologies.

What Sylvania suggests is "new," is akin to claiming an accountant cannot use the facts and data produced during discovery to create a summary spreadsheet. Such practices are commonplace in the courtroom, and are completely proper. Otherwise, courts would be further bogged down in the types of discovery (and, as here, post-discovery) motions that currently plague federal court litigation.

If read carefully, it is apparent that Sylvania does not characterize as "new" TLI's measured spectral output of Sylvania's H7ST and H7CB lamps ('H7 lamps") nor the data contained in Exhibit E to TLI's Motion (representing the *measured* characteristics of the H7 filament only). Rather, Sylvania complains that TLI supported its Motion using a desired daylight spectra based on color temperatures other than 3500K and therefore the *calculated* values of the normal and non-normal light differ from those previously produced constituting "new" data.

---

[1] Sylvania's contemporaneously filed letter motion requesting an extension of time to respond to TLI's infringement argument is yet another transparent attempt to have three bites at the proverbial apple.

Such "calculations" are analogous to an accountant being asked to *calculate* a different percentage profit from existing data, as is also commonplace (i.e., changing the percentage from 3% to 4%). The underlying data is the same, the *calculation* is a recognized and accepted methodology, and such is an accepted practice during both direct and cross-examination. Such calculations are also necessary for a number of reasons including the following.

First, because Sylvania failed to produce any daylight for the H7 lamps, TLI reasonably relied on color temperatures, and corresponding "standard" desired daylight spectra, correlating with the color temperatures of the *actual* spectral output of the H7 lamps which are inherently *chosen by the maker of the bulb*. *See* Sylvania Mot. to Strike, Dkt. No. 218, p.5, fn. 6. It should be axiomatic that Sylvania's "desired daylights" for the H7CB and H7ST lamps are at color temperatures equivalent to the color temperatures of the commercial H7 lamps as sold by Sylvania. The methodology used by TLI of calculating color temperatures by comparing the measured spectral output of the lamps to that of a black body radiator and applying a best fit analysis was thoroughly described by Sylvania itself (Exhibit A, Sylvania's Resp. to TLI's Interrog. No. 13) and the methodology used by TLI of determining a desired daylight spectra from the calculated color temperature using a CIE standard formula was similarly disclosed and is widely known in the industry (Exhibit B, TLI's Supp. Resp. to Sylvania's Interrog. No. 4).

Second, contrary to opposing counsel's "recollection," TLI has *never* limited a "desired daylight" spectrum to that which correlates to a color temperature of 3500K. For example, TLI's supplemental response to Sylvania's Interrogatory No. 4 (Exhibit B) explained that TLI would rely on daylight spectra calculated in accordance with CIE standards, and that TLI confirmed are accurate at color temperatures below 4000K. Against the weight of disclosures made by TLI, Sylvania questionably seeks to limit TLI's case to a single color temperature, solely because TLI

provided a sample daylight spectrum at 3500K as a exemplary comparison to illustrate one of many spectral distributions in accordance with the CIE formula. *Id*.

Third, it is well known that different voltage levels supplied to a lamp will result in different color temperatures, as is the case in a vehicle headlamp when in operation. TLI reasonably relied on the daylight spectra resulting from the measured spectral distribution of Sylvania's H7 lamps to calculate color temperatures at several common voltage levels in order to more accurately confirm Sylvania's infringement.

Finally, even assuming *arguendo* the data is "new," Sylvania is not prejudiced by its introduction because Sylvania's H7 lamps also infringe when compared to a desired daylight spectra at a color temperature of 3500K. Ex. C, TLI02998-TLI03024, TLI3063-TLI3078, and TLI3108-TLI3123. Further, Sylvania advertises the color temperatures of its lamps as approximations (e.g. ~3500K) and it is a known practice in the industry to advertise that lamps operate at ranges of color temperatures (e.g. 3500K +-150K). *See* Exs. L and M to TLI's Motion, Sylvania H7 specifications. Accordingly, the difference in the color temperatures used by TLI and 3500K is insignificant, and Sylvania faces no prejudice of having to meet the allegedly "new" testimony.

Suffice it to say, Sylvania has never presented evidence, let alone a cognizable argument based on such evidence, that its H7 lamps do not infringe when compared to *any* desired daylight spectra correlating with color temperatures in the claimed range from "about 3500K."

Once again Sylvania has attempted to extend this litigation with spurious arguments, and contrary to the Court's rules before ever having contacted TLI's counsel to "meet and confer" on such, that avoid directly responding to the overwhelming evidence of infringement as established in TLI's pending Motion. Accordingly, TLI respectfully requests that the Court deny Sylvania's

Motion to Strike and order Sylvania to respond to TLI's pending Motion within the currently scheduled deadline.

## Argument

TLI does not dispute Sylvania's asserted Second Circuit test for assessing exclusion of previously undisclosed material which requires that the Court consider: (1) the party's explanation for its failure to comply with the disclosure requirement; (2) the importance of the excluded evidence; (3) the prejudice suffered by the opposing party of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). In addition to the fact that there was no failure to disclose, each of these considerations favors denial of Sylvania's Motion to Strike as discussed below.

I.  **TLI's Explanation**

   A.  **The Data Provided in Support of TLI's Motion was Previously Produced as were the Methods by which the Calculated Values were Determined**

For its Motion, TLI had <u>not</u> conducted any new tests or measurements nor has it provided any new data resulting from such. The measured spectral outputs of the H7 lamps at the tested voltages were provided to Sylvania in TLI03067-TLI03068 and TLI03073-TLI03074 (Exhibit D) and were specifically cited as the source of the data on Exhibits A-B and F-I to TLI's Motion. Further, TLI's supplemental response to Interrogatory No. 3 (Exhibit B) describes, in detail, TLI's method of measurement and the resulting data with respect to the transmission of the coating for both H7 lamps. The data indicated as "Observed T($l$)," and provided at ten nanometer increments in TLI03125 (Exhibit E), is that of Exhibit C, p. 2 and Exhibit D, p.2 to TLI's Motion.

The method used by TLI to calculate the color temperature from the measured spectral distribution was described by Sylvania in its response to TLI's Interrogatory No. 13 (Exhibit F):

> ...the (correlated) color temperature of a light source has been determined on the 1960 CIE UCS Chromaticity Diagram as the temperature of a blackbody radiation corresponding to the point on the blackbody locus that is closest to the chromaticity point of the stimulus.

TLI further disclosed, in its supplemental response to Sylvania's Interrogatory No. 4 (Exhbit B), that it would rely on calculated desired daylight spectra correlating with color temperatures calculated "...in accord with *Colorimetry*, CIE publication No. 15.2 (1986) and based on *Spectral Distribution of Typical Daylight as a Function of Correlated Color Temperature*, D. Judd, D. MacAdam, and G. Wyszecki, J.O.S.A. 54 (8): 1031 (1964)."

Using the measured and previously disclosed spectral distribution of the H7 lamps and transmittance of the coatings as well as the calculated desired daylight, TLI applied previously (and contemporaneously) disclosed methods to **calculate** the values of the normal ($S(l)$) and non-normal ($S^*(l)$) light emanating from the bulb and illuminating the target and its respective proportion (N). *See* Ex. B, TLI's Supp. Resp. to Sylvania's Interrog. No. 3.  Accordingly, it is no more burdensome for Sylvania, as an experienced lighting company, to perform these calculations, all of which are based on measured data that was previously produced.  In fact Sylvania specifically requested, and TLI produced, native versions of the data in "usable" form, presumably for the purpose of performing its own calculations. *See* Ex. G, Ltr. to M. Oropallo of December 7, 2007.  As expected, given the *measured*, and previously produced, daylight spectral distributions of the H7 lamps, as well as the physical lamp properties, the transmittance of the H7 lamps was shown to be in substantial accordance with the formula of the asserted claims.[2]

### B. In Light of Sylvania's Evasive Production, TLI's Desired Daylight Calculation was reasonable

---

[2] *See* Ex. Z to TLI's Motion, Fairchild Decl., p.7 ("If, for example, a bulb produces a daylight distribution, has a tungsten filament, and a coated envelope, then its properties will necessarily be described by the equation in claim 1.").

Although the measured spectral data and daylight calculation methods were previously disclosed, Sylvania raises an inapplicable "red herring," and complains that the desired daylight spectra used were based on color temperatures of other than 3500K.  While TLI agrees that the desired daylight is that which is chosen by the maker of the bulb, as interpreted by the Court in its Claim Construction Decision (Dkt. No. 108), Sylvania curiously complains of TLI's failure to produce the desired daylight spectra[3] supporting its Motion while admitting it was solely in possession of that information.  The assumption that the H7 lamps as sold produce the spectrum and color temperature desired by Sylvania is entirely reasonable and not controverted.

If Sylvania now claims, as it seems to be doing for the first time, that its desired daylight spectra is that of a CIE standard spectra at 3500K, as opposed to that of its lamps, then Sylvania's H7 lamps infringe as a matter of law, as is shown in Exhibit C, TLI02998-TLI03024, TLI03063-TLI03078, TLI03108-TLI03123 and TLI03125-TLI03237.  However, considering the inherent voltage variance of a lamp in use in an operational vehicle, TLI simply found it most reasonable to assume that the color temperature correlating to the *actual* measured spectral output of the H7 lamps at the three exemplary voltages was that which Sylvania desired for those products.

Further, Mr. Banowit's recollection is incorrect in his characterization that "TLI had supplemented its response to Interrogatory No. 4 on September 10, 2007 by identifying 3500K as the *only* desired daylight it intended to rely upon" (emphasis added), as he significantly misstates the record. *See* Banowit Decl. in Support of Sylvania's Mot. to Strike, Dkt. No. 219, ¶12.  TLI's response actually indicated that the exemplary daylight at 3500K provided in response to the interrogatory was one of any number of standard daylight spectra available in accordance with

---

[3] As noted above, there is no "the" daylight spectrum. The Patent refers to a "desired daylight," and the Court has construed that to mean any one of a plethora of daylight spectra. *See* Claims Construction Decision, Dkt. No. 108, p. 23.

the CIE standard. *See* Ex. B, TLI Supp. Resp. to Sylvania's Interrog. No. 4 ("[TLI] determined that this formula is also applicable to lower color temperatures (*e.g.*, 3500K)...) (emphasis added). TLI "selected for comparison," as an illustrative example, daylight spectral data at 3500K. *Id*. ("A graphical display of the spectral power distribution...at a color temperature of 3500K illustrates this spectral distribution."). Read in the context of the entire response, it is clear that TLI intended to rely on standard daylight spectra as calculated using the methods described which are well-known in the industry and by those skilled in the art. *Id*.

Even further, TLI produced the calculated correlated color temperatures (CCT) for the vast majority of Sylvania lamps at TLI03125-TLI03237, TLI03279-TLI03304 and TLI03305-TLI03335 (Exhibit I). Notably, TLI03131-TLI03133 identify the calculated CCT of the H7CB lamp at 12.0V, 12.8V and 13.5V to be 3302.819265 (3303K), 3390.643426 (3390K) and 3463.221297 (3463K), respectively. *Id*. These color temperatures are the same as those used in Exhibits A, F and G to TLI's Motion. Moreover, TLI's expert, Mark Fairchild, indicated in his expert report that, although 3500K is a typical daylight distribution, "[i]t should be noted, that the agreement could potentially have been made greater by selecting different daylight distributions for each measured bulb." Ex. Z to TLI's Motion, Fairchild Report, p. 5. Accordingly, Sylvania's assertion that "TLI's discovery responses and TLI's expert reports provided Sylvania with no notice that TLI would rely on anything other than the specific 3500K daylight spectrum" is disingenuous at best. *See* Sylvania's Mot. to Strike, Dkt. No. 218, p. 10.

In support of its Motion, TLI provided data at three exemplary voltage levels showing that the calculated color temperature at each voltage level was about 3500K and the spectral output of the H7 lamps was within about 30 percent of the calculated desired daylight value, and the combined average within about 10 percent of the combined desired daylight values, between

about 400 and 700 nanometers at each respective calculated color temperature. *See* Claims Construction Decision, Dkt. No. 108, p.7. Instead of joining in Sylvania's quibbling about the imperceptible differences in the resulting desired daylight spectra of small deviations from a color temperature of 3500K, TLI continues to await any credible argument rebutting TLI's thus-far uncontroverted evidence of infringement by Sylvania's H7 lamps.

TLI's explanation shows that all of the measured data used in support of its Motion was previously produced as were all of its calculation methodologies. TLI simply used desired daylight spectra based on color temperatures based on *actual* spectral distributions and show Sylvania's infringement even more dramatically. Accordingly, TLI's explanation favors denial of Sylvania's Motion to Strike.

## II.     The Remaining Second Circuit Factors

### A.   The So-called "New" Evidence is Unimportant as Sylvania's H7 Lamps Still Infringe When Compared to a Daylight Spectrum at 3500K and Therefore Sylvania Cannot Show Prejudice

The asserted claims require that the transmittance level for the coating of the H7 lamps be substantially in accordance with a formula that includes the variable $D(l)$ which represents the radiance at a given wavelength of the desired daylight. *See* Claims Construction Decision, Dkt. No. 108. Accordingly, the desired daylight data is important in that it is necessary to provide evidence of infringement of the asserted claims. However, while the evidence is important, TLI concedes that whether the desired daylight used in the infringement analysis is the daylight spectra correlating with the color temperature of the actual spectral output of the H7 lamps or the daylight spectra correlating with a color temperature of 3500K, Sylvania's H7 lamps infringe. *See* Ex. C, TLI02998-TLI03024, TLI3063-TLI3078, and TLI3108-TLI3123. Specifically, as one illustrative example, Exhibit J confirms Sylvania's H7CB lamps infringe at 12.8 volts when

compared to both 3500K and 3450K daylight. All of the H7 lamps similarly infringe irrespective of which voltage and which daylight spectrum is used for comparison and therefore any differences in the allegedly "new" desired daylight data are immaterial. *See* Exs. C, TLI02998-TLI03024, TLI3063-TLI3078, and TLI3108-TLI3123, and A-K to TLI's Motion.

Considering Sylvania infringes irrespective of which daylight spectra is used, Sylvania has produced no material evidence that it is prejudiced by the data supporting TLI's Motion. The measured data is not new and Sylvania was equally situated to perform the calculations previously and thoroughly described by TLI (including in the asserted patent itself) in order to determine desired daylight spectra, as emitted by its own commercially produced lamps, normal ($S(l)$) and non-normal ($S^*(l)$) light emanating from the bulb and illuminating the target, and their proportion (N). Sylvania has never provided spectral data from which a color temperature could be calculated, nor has it provided any desired daylight spectra contra to the actual color temperatures of its commercial lamps. Moreover, Sylvania advertises its bulbs as having *approximate* color temperatures, apparently recognizing the effect of the variation in operational voltage. *See* Exs. L and M to TLI's Motion, Sylvania H7 specifications. Sylvania's specifications and advertising further confirm TLI's assertion that comparison with the same daylight at various voltage levels is more accurate. Having failed to provide its own data, Sylvania cannot show that it is prejudiced by data calculated using methods previously disclosed and found to be appropriate by TLI's experts. *See generally*, Ex. Z to TLI's Motion, Fairchild Report.

> B. **The Record Over the Last *Six* Years is Replete with Continuances, Extensions and Delay on Behalf of Sylvania which Counsels Against the Possibility of yet Another Unwarranted Continuance**

While numerous instances could be discussed evidencing Sylvania's conduct motivated solely by a tactic of delay, suffice it to say that this case has been pending for over six years. Discovery has been closed for over two years with the exception of limited discovery requested by Sylvania in a desperate, and failed, attempt to find some evidence to support any of its baseless inequitable conduct claims. Sylvania's Motion to Strike is distracting, evasive, and calculated to delay offering any valid defense of its infringement which it does not have. Dispositive motions are currently pending and TLI respectfully requests that the Court avoid validating Sylvania's continued tactic of delay by refusing to extend this motion period and denying Sylvania's Motion to Strike.

## Conclusion

For the reasons stated above, TLI respectfully requests that the Court deny Sylvania's Motion to Strike TLI's Motion for Partial Summary Judgment and award such other and further relief as the Court deems just and proper.


Dated:  March 26, 2010                         **HISCOCK & BARCLAY, LLP**

                                                          By:    s/ Michael A. Oropallo
                                                               Michael A. Oropallo
                                                               One Park Place 300 South State Street
                                                               Syracuse, New York 13202-2078
                                                               Telephone (315) 425-2831
                                                               Facsimile (315) 703-7367
                                                               E-Mail: moropallo@hblaw.com

                                                               Christopher E. Blank
                                                               2000 HSBC Plaza, 100 Chestnut Street
                                                               Rochester, New York 14604
                                                               Telephone (585) 295-4308
                                                               Facsimile (585) 295-8440
                                                               E-Mail: cblank@hblaw.com

                                                               Attorneys for Plaintiff
                                                               *Tailored Lighting, Inc.*

**Certificate of Service**

I, Michael A. Oropallo, as attorney for Plaintiff Tailored Lighting, Inc., hereby certify that, on this 26th day of March 2010, I caused Tailored Lighting's Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Strike to be electronically filed with the Clerk of the District Court for the Western District of New York using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| Donald R. Banowit | Donald W. O'Brien, Jr. |
| Sterne, Kessler, Goldstein & Fox P.L.L.C. | Woods Oviatt Gilman LLP |
| 1100 New York Ave. N.W. | 700 Crossroads Building |
| Washington, DC 20005 | Two State Street |
| | Rochester, New York 14614 |

                                      s/ Michael A. Oropallo
                                      Michael A. Oropallo