UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAILORED LIGHTING, INC.,

                                    *Plaintiff,*

                vs.

OSRAM SYLVANIA PRODUCTS, INC.,

                *Defendant.*

Civil Action No.
6:04-CV-6435-MAT-MWP

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT

**HISCOCK & BARCLAY, LLP**
*Attorneys for Plaintiff*
Tailored Lighting, Inc.
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2878
Tel: (315) 425-2831
Fax: (315) 703-7367
E-Mail: moropallo@hblaw.com
E-Mail: cblank@hblaw.com

Michael A. Oropallo
Christopher E. Blank
    *of Counsel*

**Preliminary Statement**

Plaintiff Tailored Lighting, Inc. ("TLI") submits this Memorandum of Law in opposition to defendant Osram Sylvania Products, Inc.'s ("Sylvania") Motion to Alter or Amend the Judgment including the Court's finding of invalidity of claim 1 of the asserted U.S. Patent No. 5,666,017 ("'017 Patent"). Respecting the Court's Decision and Order (Dkt. No. 226) ("Decision and Order"), TLI believes evidence was overlooked and/or was misapplied as set forth in TLI's Motion for Reconsideration (Dkt. No. 236), i.e., at pages 6-12. TLI therefore incorporates such arguments by reference in response to this motion.

The '017 Patent assumes the "maker of the bulb" would have access to the components of "the bulb," and would not be forced to measure, calculate, or otherwise obtain the physical and optical characteristics for "the bulb," only that a coating be designed to convert the optical characteristics of "the bulb" to that of a "desired daylight" spectrum. Sylvania, as maker of the accused bulbs, had this information within its possession or control, as exemplified by its *after-the-close-of-discovery* production of uncoated bulbs (which TLI had tested in a timely manner – *See* Exs. C and D to TLI's Summary Judgment Motion, Dkt. Nos. 215-7 and 215-8). However, Sylvania chose not to produce this information, but rather, resort to litigation tactics delaying the production of such until *after* the close of the initial discovery period (that Judge Payson extended for limited purposes), which testing confirmed TLI's earlier calculations of the spectral characteristics for the accused bulbs.

Whether the Court looks to the actual measured values of the spectral characteristics for the accused bulbs, or the complex but scientifically acceptable calculations performed by TLI and its expert, these are characteristics that *are known to one skilled in the art – i.e., the maker of the bulb*. The formula of claim 1 of the '017 Patent, then takes these *known* values, and

determines the composition of a coating at each wavelength of light, in order to change the spectral output of the uncoated bulb, to the spectral output of a "desired daylight," at a specific color temperature.  Therefore, a person skilled in the art would be enabled to practice the '017 Patent, as he or she would know the characteristics of the bulb he or she was starting with.

In the present case, Sylvania refused to produce such *known* information that was clearly within its possession and control.  As such, TLI was forced to use alternate means to *calculate* such information, a contingency the specification of the "017 Patent expressly includes.  TLI found it hard to believe Sylvania did not have these values within its possession and control as the "maker of its bulbs," and rather than Sylvania voluntarily producing uncoated versions of *its* bulbs, TLI was forced to engage in discovery motion practice to obtain uncoated bulbs, that Sylvania avoided producing until *after* the close of discovery, despite the Court's mandates.

Sylvania is thus using as a "sword" that which its used as a "shield" during the course of discovery to claim TLI has not produced "actual" values for the variables S* and N.  In reality, TLI has produced *actual* values, it was just forced (by Sylvania's litigation tactics) to *calculate* these actual values (that would be known to the maker of a bulb), which values were later confirmed to be accurate when the uncoated bulbs were *measured.*

Suffice it to say, one skilled in the art (i.e., the maker of a bulb) would be enabled to practice the '017 Patent, and would not have to calculate or measure these values, as they would be *known.*

## <u>Argument</u>

**I.**  **The '017 Patent is Valid, Claim 1 is Enabled, and Extension of the Court's Judgment is Unwarranted**

**A.**  **Sylvania Never Produced the Composition of its Coating, the Output of its Filament, or Uncoated Bulbs Despite TLI's Numerous Timely Requests**

As the spectral output of the uncoated bulbs of the accused products was solely within Sylvania's possession, and would be known to the maker of the bulb, TLI requested this information, as early as September 26, 2007. *See* TLI's Second Set of Interrogs., No. 13 ("the value(s) ascertained by or for Sylvania...for the spectrum and spectral distribution of the radiant energy emitted by the lamp filament(s)..."), and No. 14 ("the composition(s) of the...coating(s) on the envelopes, and the filament(s), and separately for each of the...coating(s) and filament(s), the specific materials and their proportions in making the composition...."); *see also*, Ex. P to TLI's S. J. Mot., Dkt. No. 215-20. Sylvania failed to produce either the values or supply uncoated bulbs that would allow TLI to conduct such testing.

Later, after the depositions of March 4, 2008 and March 6, 2008 of non-party witnesses

███████████████████████[1] who testified about the coating process for the accused bulbs, and after the assertion of an allegedly oral confidentiality agreement between it and Sylvania, further frustrating TLI's efforts to obtain details of the accused bulbs' characteristics and coating process, TLI sent a letter to Sylvania on March 12, 2008 (Exhibit A) "renewing its demands for [information related to uncoated bulbs]."

Though almost three weeks remained until the close of discovery on March 30, 2008, Sylvania continued to ignore TLI's request until April 28, 2008 when its letter to TLI of that date (Exhibit B) indicated uncoated capsules would be produced whenever obtained from the

---

1  That surprisingly counsel for Sylvania also represented at their depositions.

Hillsboro, NH facility.   On April 29, 2008, almost one month after the close of discovery, Sylvania produced several uncoated capsules representing a small subset of the accused products. *See* Ex. C.  On May 22, 2008, TLI's letter to Judge Payson advised the Court of Sylvania's failed and deficient production and identified it as an outstanding discovery issue. *See* Ex. D, p. 5.  After ignoring TLI's demands for almost *one year*, Sylvania's letters of March 16, 2009 and April 17, 2009 produced uncoated capsules. *See* Exs. E and F.

Sylvania has failed for the entirety of the litigation to provide *any* testing or spectral data for the accused bulbs, and failed, until after the close of discovery, to provide uncoated bulbs that would allow TLI to measure the normal light output of the accused lamps without reasonable assumptions.  Consequently, TLI was forced to work backwards, to identify these *known* values, using reasonable assumptions and recognized scientific principles, and that TLI submits would enable one skilled in the art to practice the '017 Patent.

**B.    The '017 Patent is Enabled as Determination of Only the Normal and Non-normal Components of the Total Light Output is Required**

While the Court has found that TLI failed to provide actual measured values for $S^*$ for the accused products, TLI submits this "failure" is not determinative to the enablement question on which Sylvania bears the burden of *clear and convincing evidence*. *See e.g. Meyers v. Asics Corp.*, 78 F.3d 605 (Fed. Cir. 1996); *see also* 35 U.S.C. § 282.  One skilled in the art by reading the '017 Patent would understand that a bulb is made according to the '017 Patent without ever isolating S, $S^*$ or N.  Although Sylvania's obstructive litigation conduct required TLI to rely on reasonable assumptions to prove Sylvania's infringement, which assumptions were later confirmed after Sylvania's late production,[2] no assumptions are required to make a bulb having a

---

2 *See* Exs. C and D to TLI's Summary Judgment Motion, Dkt. Nos. 215-7 and 215-8, showing determined values for every variable of the formula and the substantial conformity of the transmission level of the coating of the accused products with the formula of claim 1 of the '017 Patent.

coating in substantial accordance with the claimed formula, nor does a maker of a bulb according to the '017 Patent have to "work backwards." *See* Decision and Order, Dkt. No. 226, p. 23.

A maker of a bulb according to the '017 Patent would begin with an uncoated bulb, the properties, including spectral output, of which would be measured, using a conventional spectroradiometer (as is well known in the art, and therefore known by the maker). Ex. X to TLI's S. J. Mot., Dkt. No. 215-28, Fairchild Depo., p. 194, lines 6-11 ("you would design or build an initial coating, and having access to the distribution of a lamp without a coating, measure it with the setup that you define to be the normal light that you're interested in...") The spectral output represents the normal component SN of the total light output of the finished lamp because no coating has yet been applied and all of the light illuminating the target is "normal" light. One skilled in the art would then coat the bulb, accordingly to the teachings of the '017 Patent, with a coating, the properties of which, including the transmissivity T, would be known.[3] Once coated, one skilled in the art would measure the spectral output, again using a conventional spectroradiometer, resulting in the total light output of the finished lamp SN + S*(1-N). One skilled in the art would then determine the non-normal component S*(1-N) by simply subtracting the normal component SN as previously determined. One skilled in the art would know to use the desired daylight spectra, as chosen by the maker of the bulb, and the normal SN and non-normal spectral output S*(1-N) to calculate a transmissivity T using the claimed formula. Therefore, a maker of a bulb would know to chose a coating having the calculated transmissivity, thereby producing a bulb having a coating substantially in accordance with the formula of claim

---

3 Should the maker not know the transmissivity, one of ordinary skill in the art would know to determine the transmissivity using a simple configuration of a flat filter as described in TLI's Mot. for Reconsideration, Dkt. No. 236, p. 7.

1 as well as capable of producing a daylight spectrum substantially identical in uniformity to that which was desired in ***one total iteration*** and without ever isolating S, S* or N.[4]

While it is impossible to determine, absent the reasonable assumptions that TLI made, or having access to uncoated bulbs, the spectral output of the uncoated bulbs was known to Sylvania prior to coating and would be known to anyone skilled in the art following the teachings of the '017 Patent. Accordingly, TLI continues to assert that claim 1 of the '017 Patent is enabled and respectfully requests that the Court's Decision and Order (Dkt. No. 226) and Judgment (Dkt. No. 227) be altered accordingly.

---

4 However, S, S* and N can all be calculated if desired as would be known by one skilled in the art as described in TLI's Motion for Reconsideration (Dkt. No. 236) at pp. 8-9.

## Conclusion

Because claim 1 is enabled, and the '017 Patent is not invalid, TLI respectfully requests the Court deny Sylvania's Motion to Alter or Amend the Judgment and for such other and further relief as to this Court may seem just, proper, and equitable.

Dated:  July 21, 2010                                **HISCOCK & BARCLAY, LLP**

By:  _s/ Michael A. Oropallo_____
    Michael A. Oropallo
    One Park Place 300 South State Street
    Syracuse, New York 13202-2078
    Telephone (315) 425-2831
    Facsimile (315) 703-7367
    E-Mail: moropallo@hblaw.com

    Christopher E. Blank
    2000 HSBC Plaza, 100 Chestnut Street
    Rochester, New York 14604
    Telephone (585) 295-4308
    Facsimile (585) 295-8440
    E-Mail: cblank@hblaw.com

    Attorneys for Plaintiff
    *Tailored Lighting, Inc.*

**Certificate of Service**

I, Michael A. Oropallo, as attorney for Plaintiff Tailored Lighting, Inc., hereby certify that, on this 21st day of July 2010, I caused Tailored Lighting's Memorandum of Law in Opposition to Defendant's Motion to Alter or Amend the Judgment to be electronically filed with the Clerk of the District Court for the Western District of New York using the CM/ECF system, which sent notification of such filing to the following:

Donald R. Banowit  
Sterne, Kessler, Goldstein & Fox P.L.L.C.  
1100 New York Ave. N.W.  
Washington, DC 20005

Donald W. O'Brien, Jr.  
Woods Oviatt Gilman LLP  
700 Crossroads Building  
Two State Street  
Rochester, New York 14614

s/ Michael A. Oropallo  
Michael A. Oropallo